Roberts, J.
—That the running of the statute of limitations was not stopped by the previous suit, brought and dismissed for the want of prosecution, was decided by this court in Shields v. Boone, 22 Tex., 193.
Although some of the defendants have not shown such possession as would sustain the plea of the statute of limitations, they have shown a good title in Boone, under whom the rest hold, provided the sheriff’s sale to Lockhart, the vendor of Boone, was valid.
The objection to that sale is presented in the bill of exceptions, taken by the appellants, to the exclusion of their testimony by the court, by which they proposed to prove, “that by an act of Congress of the United States, approved the 13th of May, 1846, the Secretary of War, William L. Marcy, did, on the 16th day of July, 1847, issue a requisition to the Governor of the State of Texas to call out an additional military force for the protection of the Texas frontier. That by virtue of said requisition, Samuel Highsmith was called into the service of the United States, by the Governor of the State of Texas, as one of the Texas rangers, and was regularly mustered into service, on the 10th day of May, 1847, and remained in service, being re-mustered on the 15th day of May, 1848, immedi *106 ately upon his discharge, and was finally discharged on the 26th day of December, 1848. That during the said time he remained in service as captain in the 1st regiment of Texas mounted volunteers, and that during said space of time, from the 10th of May 1847, to the 26th day of December, 1848, the said Samuel Highsmith, as captain as aforesaid, was in active service upon the frontier of the State of Texas,"and that said Highsmith held the office of captain in said service, during said space of time, by virtue of a commission issued by the Governor of the State of Texas.” It was shown on the trial, that the league of land in controversy was sold 'as the property of Highsmith, during the time of his said service, and the sheriff’s deed therefor executed to Lockhart, the purchaser, on the 3d day of October, 1848, in satisfaction of a judgment rendered upon a note executed in 1847. It is contended that these facts rendered the sheriff’s sale invalid, by force of a law of the republic enacted in 1843, as follows, to wit: ■
“ That from and after the passage of this act, the property of all such persons as are now in the army of Texas, " or as may hereafter be mustered into the service of the republic, by virtue of the law of the land, shall not be liable to forced sales, so long as he or they may remain in service.” (Art. 1349, Hart. Dig.)
By the constitution, of the State of Texas, adopted since the passage of this law, it is provided, that “all laws and parts of laws, now in force in the republic of Texas, which are not repugnant to the Constitution of the Hnited States, to the joint resolution for annexing Texas to the Hnited States, or to the provisions of this constitution, shall continue and remain in force, as the laws of this State, until they expire by their own limitation, or shall be altered or repealed by the legislature' thereof.” (Art. 13, sec. 3, Con.; Paschal’s Dig., 72.)
Tiffs law of 1843 is not repugnant to the joint resolutions for annexing Texas to the Hnited States, or to the provis *107 ions of the constitution of the State of Texas, and has neither been altered nor repealed by the legislature thereof; and therefore it is in force so far, and only so far, as it is not repugnant to the Constitution of the United States.
The Constitution of the United States provides, that “the Congress shall have°power” “to declare war;” “to raise and support armies;” “to make rules for the government and regulation of the land and naval forces;” “to provide for calling forth the militia to execute the laws of the Union, suppress insurrections, and repel invasions;” “to provide for organizing, arming, and disciplining the militia, and for governing such part of them as may he employed in the service of the United States, reserving to the States respectively the appointment of the officers, and the authority of training the militia, according to the discipline prescribed by Congress.” (Art. 1, § 8, Con. U. S.) It provides further, that “the President shall be commander-in-chief of the army and navy of the United States, and of the militia of the several States when called into the 'actual service of the United States.” (Art. 2, § 2, Con. U. S.) Also, it is provided, that “no State shall, without the consent of Congress,” “keep troops or ships of war in time of peace,” “ or engage in war, unless actually invaded, or in such imminent danger as will not admit of delay.” (Art. 1, § 9, Con. U. S.)
The"constitution of this State provides, that “the Governor shall be commander-in-chief of the army and navy of this State, and of the militia, except when they shall he called into the service of the United States.” (Art. 5, § 6.) Also, that “the Governor shall have power to call forth the militia to execute the laws of the State, to suppress insurrections, and repel invasions.” (Art. 6, § 4, Tex. Con.)
These provisions of the Constitution of the United States and of this State stand in harmony with each other, and show that it is contemplated that the militia of the State may be called into the service of the United *108 States, and compose a part of its army, under the control of the President; .and that, under circumstances and for certain objects, the militia of the State may be called into the service of the State, and compose its army, under the command of the Governor of the State.
The law of 1843, upon which appellant relies, may be applicable to persons engaged in the military service of the State and under the command of the Governor.
The facts proposed to be proved in this case do not present such a case. On the contrary, they show that Samuel ■ Highsmith was engaged in the service of the United States. Uor do the facts stated, that he was commissioned as captain by the Governor, and performed service upon the frontier within the State of Texas, make it any less the service of Ihe United States, under the control of the President; for his being commissioned by the Governor was only the exercise of a right reserved by the State to appoint the officers of her militia that may he called into the service of the United States. And his service within Texas was accidental, and might have been required by the President to have been performed in Hew Mexico or Arkansas, as well as in Texas.
In one sense, it is true, he may be said to have been in the military service of Texas, in her connected capacity with the other States of the Union. But, in the same sense, every officer and soldier of the regular army and of the militia of every other State, while in the service of the United States, would have been equally in the military service of Texas. Had this law of 1848 been passed in 1846, after annexation, (using the word State instead of republic,) it certainly could not have been construed to embrace in its provisions the regular soldiers and militia of other States engaged in the service of the United States. We cannot give it any broader scope by its being passed before annexation, than if passed after-wards.
*109 If it be permissible to look to the extrinsic causes which prompted its enactment in 1843, however much they may be still applicable equally to the military service of the State, upon the emergencies which authorize the State to raise and control an army, they are not applicable to the military service of the United States. (McOartha & White v. Lowther & Parrish, 3 Kel. Ga. B., 403.)
Highsmith was not “mustered into the service of the State (republic) of Texas,” and, therefore, his property was not “exempt from forced sale.”
We think the court did not err in excluding the evidence offered. •
Judgment affirmed.