[1] Rehearing denied.
Appellees, who are the owners of survey No. 12 made for the San Antonio Mexican Gulf Railroad Company, brought this suit to recover 169 acres of land alleged by them to be a part of that survey, but claimed by appellants under a junior patent issued to F. C. Proctor. The controversy turned upon the location of the western and southwestern boundary of the first-named survey. The court below found that line to be so located as to include the land sued for, and gave judgment for plaintiffs, and the main question involved in this appeal is whether or not the facts justified this conclusion.
The following sketch will indicate the contention of the parties:
[EDITORS' NOTE: 1ST MAP IS ELECTRONICALLY NON-TRANSFERRABLE.]
The field notes of No. 12 are as follows: "Beginning at the north corner of survey No. 10 for state of Texas, in west boundary line of Milsaps' survey; thence south, 55 degrees west, at 225 varas crossed center of San Antonio Mexican Gulf Railway at 2,483.2 varas to a post for corner in north boundary line of survey No. 11; thence north, 35 degrees west, 1,453.82 varas, to A. B. Williams' south corner; thence north, 55 degrees east, with A. B. Williams' lower line, at 1,755.2 varas crossed center of San Antonio Mexican Gulf Railway, at 2,485.2 varas post for corner in west boundary line of I. Milsaps' survey; thence south, 35 degrees east, with west boundary line of I. Milsaps' 900-acres survey at 1,453.82 varas, to post, and place of beginning." The calls for the west line of the Milsaps and for the south corner of the Williams surveys cannot be reconciled with the calls for the railroad. The location of the north corner of No. 10, also called for, depends somewhat upon the solution of the same questions as are involved in the ascertainment of the lines of No. 12. Surveys Nos. 7, 8, 9, 10, 11, and 12 were located at the same time, and by the same surveyor. At that time the map of Victoria county showed the Milsaps western line to be east of the railroad, as called for in the field notes of No. 12, and with the field notes of that and the other surveys, made at the same time, sketches were returned to the land office by the surveyor so locating it. Survey No. 9 connects on its eastern line with the William Ripley survey, and its western boundary is partly formed by a line running along the center of the railroad track. The beginning or southeastern corner of No. 8 is called to be in the center of the track, at a named course and distance from the corner of an older survey on the south, which is not delineated on the sketch. No. 8 ties to two older surveys on its south, and its eastern line and corners are all in the center of the railroad track. No. 10 begins at the north corner of No. 8, in the center of the railroad track, runs with the northern line of that survey to its west corner, thence northwardly and eastwardly, calling in the latter course to cross the railroad at a given distance, and to corner in the Milsaps west line at the same point where such line is called for in the field notes of No. 12. Thence it calls to run with Milsaps' west line to its south corner; thence with its lower line to corner of No. 9; thence back to beginning in the railroad track, — this line, for part of its distance, following the course given in other field notes for the railroad. It will be seen that in his work the surveyor assumed a position for the railroad, with reference to the Ripley and the older surveys south and west of those which he made, and based his descriptions on the track, locating the lands with reference to it There is nothing to indicate any mistake as to the locations of the older surveys just mentioned. But it is developed that the Milsaps survey is not situated, in relation to the railroad, as all of the field notes mentioning it show the surveyor, in accordance with the *Page 489 
map, assumed it to be. It is now conceded that the west line of the Milsaps, found by running it out by course and distance from the Hays, which has marked lines, lies west of the railroad. It is impossible to assume, however, that the surveyor, in making the survey of No. 12, knew the true location of the Milsaps line, and yet, in his field notes, not only of 12, but of 10, and in his sketches, placed it east, instead of west, of the track. The conflict between the calls of No. 12 are such as to show that the surveyor mistook the location, either of the railroad on the one hand, or of the Milsaps line and the Williams corner on the other; and it is necessary to determine wherein the error was. If we had nothing to guide us but the field notes of No. 12, the calls for the Milsaps line and the Williams corner might be held to prevail over that for the railroad, if we assumed, as did the court below, that there was no actual survey. But when we consider all the work done at the same time, constituting a block of surveys tied to older surveys and to each other, their field notes harmonizing with each other and with the county map, and making the railroad the boundary between several of them, no doubt is left that the surveyor was in error as to the whereabouts of the Milsaps line, which had nothing on the ground to identify it. This error led inevitably to another, — as to the corner of the Williams. The distance called for the lines of No. 12, running west from the Milsaps, is the same as that given in the field notes of the Williams for its southern line, running west from that survey. When the surveyor assumed the Milsaps line to be too far east, he necessarily assumed that when he had run as far west as the length of the line of the Williams, he would be opposite its corner, as called for; the Williams as well as the Milsaps being an unmarked prairie survey. The call in the field notes for the corner of No. 10 and the connection of both surveys with Nos. 8 and 9 show exactly how the surveys were constructed with reference to the railroad, and, in our opinion, make that the most satisfactory and reliable object by which to locate them. The evidence shows a difference of a half degree between the true course of the railroad and that called for in these field notes. But that might be accounted for, as the witnesses show, by a difference in the variations used in running it, even if there was an actual survey. The court below found as a fact that there was no actual survey of the sections in question, and appellants have attacked this finding as being unwarranted by the facts; but, since we think the conclusion is the same whatever might be the decision of the point thus raised, we consider it unimportant to pass upon it. Our conclusion is that the work of the surveyor shows that he located the common corner of Nos. 10 and 12 at a point 225 varas from the railroad in the course called for by the field notes for their dividing line; that by this error the surveyor was caused to erroneously suppose that when the length of the Williams line was traversed from that corner, a point south of the south corner of that survey was reached, and that hence he stopped the line of No. 12 at such point, leaving the land in controversy outside of that survey; and that, therefore, the judgment appealed from is erroneous. Reversed and rendered.
 *Page 1054