## NELSON NUGENT v. J. W. WADE ET AL.

Decided December 3, 1910.

**1.—Title—Evidence—Judgment Against Unknown Heirs.**

Judgment upon citation by publication in a suit against the unknown heirs of a patentee of land, is not admissible in evidence to show that the patentee was dead at the time the judgment was rendered; and hence, in the absence of any other evidence of that fact, such judgment would constitute no link or muniment of title, in an action of trespass to try title, upon which a plaintiff could rely in deraigning his title from the State.

**2.—Evidence—Judgment.**

To establish the mere fact that a particular verdict was given or judgment rendered, and the legal consequences which result from that fact, a judgment is always admissible in evidence, even as against strangers to it; but when offered for the purpose of establishing some collateral fact, upon the supposed existence of which the judgment is founded, it is not admissible, in the determination of matters of private right, as against strangers to the proceeding in which it was rendered, except when the judgment is one *in rem*.

**3.—Trespass to Try Title—Evidence.**

In an action of trespass to try title against defendants who claimed only under the statute of limitation, evidence considered, and held insufficient to connect the plaintiff with the original patentee, and hence insufficient to support a verdict against the defendants.

**4.—Limitation—Tenancy—Contract to Purchase.**

Where one enters into possession of land under a contract to purchase the same, made with another who falsely represented himself as the agent of

the owner, and said contract is in no manner adopted or ratified by the owner, notice to the owner of a repudiation of the contract of purchase by the intending purchaser is not necessary in order to set in motion the statute of limitation against the owner and in favor of the intending purchaser. Evidence considered and held insufficient to show that defendants in trespass to try title held the land in controversy as tenants of the plaintiff.

### 5.—Evidence—Admission Not Binding, When.

An admission which is based upon or caused by a false statement of the party to whom the admission is made, is not binding on the party making the same.

### 6.—Principal and Agent—Notice to Agent.

Where one acquires possession of land under a contract with the agent of the owner to purchase the same, and afterwards repudiates the contract, notice of the repudiation given to the agent and of an intention to claim the land under the statute of limitation, is sufficient notice to the owner.

### 7.—Limitation—Adverse Possession—Offer to Buy Title.

A statement by one in possession of land that he was willing to pay something to anybody who could make him a good title, is not necessarily an admission that he was holding it subject to the right of the true owner.

### 8.—Appeal—Remanding Cause—Practice.

Even though the evidence was such that the trial court would have been warranted in instructing a verdict for the appellant, upon reversal of the judgment the cause will be remanded when it is apparent that the case has not been fully developed.

Appeal from the District Court of Henderson County. Tried below before Hon. B. H. Gardner.

*Richardson, Watkins & Richardson,* for appellant.

*John S. Prince* and *W. R. Bishop,* for appellees.—That plaintiffs connected themselves with the State: Ledbetter v. Higbee, 35 S. W., 801; McCamant v. Roberts, 1 S. W., 260.

The appellant having entered on the land in controversy under an executory contract of purchase of appellee's title, it was not necessary for appellees to show title from the State. Casey v. Hanrick, 6 S. W., 405; Frazier v. Waco Bldg. Assn., 61 S. W., 132; Parsons v. Hart, 46 S. W., 856.

It being shown that defendant went into possession under a purchase from the Monk boys, with knowledge that his vendors, the Monk boys, were holding under an executory contract of purchase from plaintiffs, Wade and Dr. Hallum, deceased, and retained the possession thus acquired, and the death of Hallum and heirship of plaintiffs being established, this was sufficient proof of title to authorize plaintiffs to recover. Hintze v. Krabbenschmidt, 44 S. W., 39; Casey v. Hanrick, 6 S. W., 405; Young v. Trahon, 97 S. W., 147; Moore v. Kempner, 91 S. W., 336.

The uncontradicted evidence showing that appellant entered upon the land in controversy under an executory contract of purchase of the appellees' title, and, having failed to comply with the terms of said

contract, never gave notice to those under whom he entered of his intention to repudiate their title, limitation did not begin to run in his favor against appellees, and he can not recover on a plea of ten years limitation, and it was error for the court to refuse to instruct the jury to find for appellees. Wilson v. Nugent, 91 S. W., 241; Runge v. Gilbough, 87 S. W., 832; Manning v. K. & T. Coal Co., 81 S. W., 140.

TALBOT, ASSOCIATE JUSTICE.—This is an action of trespass to try title, brought by the appellee, J. W. Wade, and the widow and heirs of Dr. E. J. Hallum, deceased, to recover 220 acres of land situated in Henderson County, Texas. The land is a part of the Nancy Lovell survey, and the suit was instituted on the 26th day of August, 1908. The defendant pleaded not guilty, and that he had acquired title to the land in controversy by adverse possession for more than ten years. In reply to the defendant's claim of title by limitation, the plaintiffs alleged that the possession upon which defendant relied for such title was acquired and held by him as a tenant of the plaintiff Wade and of the said Dr. E. J. Hallum, deceased. The case was tried September 14, 1909, and, upon the conclusion of the evidence, the court instructed the jury to return a verdict in favor of the plaintiffs for all the land sued for and described in their petition, unless they found for the defendant for some part of said land under his plea of limitation of ten years. The jury returned a verdict in favor of plaintiffs for 120 acres of the land, and in favor of the defendant for 100 acres thereof. Judgment was entered in accordance with the verdict and the defendant appealed.

The appellant presents but one assignment of error, which is as follows: "The court erred in charging the jury to find for the plaintiffs for all the land sued for, unless they find for the defendant under his plea of limitation, and in failing to give special charge No. 2 requested by the defendant, to the effect that, since there was no evidence connecting the plaintiffs' claim with that of Nancy Lovell, the patentee, or that she was dead, the jury should find for the defendant." We think the assignment is well taken. The record fails to disclose any evidence whatever connecting, by deed or otherwise, the claim of the plaintiffs with that of Nancy Lovell, the patentee of the land. In proof of their title to the land the plaintiffs only offered in evidence: (1) the patent issued by the State to Nancy Lovell, July 2, 1852; (2) a judgment rendered in the District Court of Henderson County on January 15, 1907, upon service of citation by publication in a suit, No. 2551, styled V. F. Hallam et al. v. Unknown Heirs of Nancy Lovell, purporting to divest such title as Nancy Lovell's unknown heirs had in and to the land and vesting it in plaintiffs; (3) deed from S. A. Erwin to Ed Hallam conveying an undivided half interest to the land in controversy, dated December 13, 1881, acknowledged March 2, 1885; (4) deed from Thos. and Frances McKee by their executors to John W. Wade to an undivided interest in one-half of the land in controversy, dated January 1, 1872. The record shows no effort made by the plain-

tiffs to prove that Nancy Lovell was dead, or that she had heirs living at the time the suit above referred to was instituted or at the time the judgment therein was rendered. Nor was it shown or attempted to be shown, so far as the record discloses, that Nancy Lovell had ever voluntarily parted with the title to the land, or that it had been divested out of her by suit or otherwise. Neither was it shown that the plaintiffs' claim is based upon some right acquired from Nancy Lovell, nor from some real or supposed heir of hers. But it does appear that the appellant was not a party to the suit of Hallam and others against Nancy Lovell's unknown heirs, but that he was a stranger to said suit and the judgment therein rendered. It follows that said judgment was, as to appellant, *res inter alias acta,* and that the evidence offered by the appellees was insufficient to show title in appellees from and under the sovereignty of the soil.

This, we think, is made certain by the decision of our Supreme Court in the case of McCamant v. Roberts, 66 Texas, 260. In that case, following the rule laid down by elementary writers in regard to the admissibility and effect of verdicts and judgments, it is held that to establish the mere fact that a particular verdict was given or judgment pronounced, and the legal consequences which result from that fact, the judgment is always admissible, even as against strangers to it; but when offered with the view of establishing some collateral fact, that is, not to prove the mere fact that such a judgment has been pronounced but, as a medium of proving some fact as found by the verdict or upon the supposed existence of which the judgment is founded, they are not admissible "in the determination of matters of private right as against strangers to the proceedings in which they are rendered, except in those matters of a public nature in which the proceeding is termed *in rem,* and from public considerations held to be binding on all persons."

Instancing a case in which a judgment will be admissible against a stranger to the proceeding in which it was pronounced, it is said: "That if one seeks to deraign title through sale under an execution, he may and must show that a judgment was rendered which authorized that execution to issue." In the case cited, W. R. Baker claimed to be the owner of the land certificate on which the grant was made, through conveyances made by several persons, including Charles Chamberlain, down to himself, and the opinion declares that the vital question in the case was: Did the Wm. T. Evans, to whom the land was patented, sell the land certificate to Charles Chamberlain? And it is pointed out that to make that proof, the plaintiff, over objections, was permitted to introduce in evidence a judgment rendered in the District Court of Shackelford County, upon service of citation by publication, in a suit instituted by W. R. Baker against the unknown heirs of Wm. T. Evans, to remove cloud from the title. In holding that this judgment was inadmissible and ineffective for the purpose for which it was offered, the court said: "It was offered, evidently, to show that Wm. T. Evans, to whom the land was granted, was dead, for a judgment could

not be rendered against his heirs, known or unknown, so long as he lived; for until his death he had no heirs. It was not admissible for any such purpose, and was utterly ineffective upon one who claims through him; while, had it been proved that he was dead when the proceeding in which the decree was rendered was instituted, if the court acquired jurisdiction over his unknown heirs, then it would have been not only admissible against one subsequently purchasing from such heirs, but conclusive of the rights of the person in whose favor the decree was rendered. Proof of the death of W. T. Evans, and, as a result, that the persons brought before the court represented the title which it was admitted he once had, and so, as his heirs, could not be thus made." So, the judgment in favor of V. F. Hallam and others against the unknown heirs of Nancy Lovell, was not admissible to show that Nancy Lovell was dead, and as there was no other evidence that she was dead, and as no judgment could be rendered against her heirs so long as she lived, said judgment constituted no link or muniment of title upon which appellees could rely in deraigning their title from the State.

But appellees contend that appellant entered upon the land in controversy under an executory contract of purchase of their title, and hence it was not necessary for appellees to show title from the State. Without stating it in detail, we think the evidence insufficient to sustain this contention. There was evidence that appellant contracted with one Coyner, living in Athens, representing himself to be the agent of the owners of the land, to buy one hundred acres of the land in controversy; and that the "Monk boys" contracted with him to buy the other one hundred and twenty acres, and that possession was taken by each of his respective tract; but we think it conclusively appears that Coyner was wholly without authority to make such contracts, and that both appellant and the Monk boys shortly thereafter repudiated them; that the Monk boys abandoned the land contracted for by them and appellant took possession of it, and that such possession as he may have had and held of that tract since its abandonment by the Monk boys, and of the tract which he himself contracted to buy, has not been under and in recognition of said contracts, but independent of the same and adverse to the rights of appellees and all other persons. Coyner having no authority to make the contracts of purchase entered into with appellant and the Monk boys, and the same not having been ratified by Wade and Hallam, notice of the abandonment and repudiation of said contracts was not necessary. But if such notice was necessary, then it appears that the same was given to Coyner by appellant.

The statement by Hallam to appellant that whatever arrangement he made with Coyner in reference to buying the land, would be satisfactory to him, was based upon the statement made to him by appellant to the effect that Coyner had informed appellant that J. W. Wade, the joint claimant of the land, had employed him, Coyner, to sell the land. That Coyner had been so engaged by Wade, Hallam evidently believed; but as he had not been, and Coyner's statement was not true,

the remarks of Hallam were not binding and constituted no authority for any contract Coyner and appellant may have made with reference to the land.

The appellees have filed and presented in their brief cross assignments of error. By these assignments it is contended that the court erred in refusing to give certain special charges requested by the plaintiffs to the effect (1) that the uncontradicted evidence showed that defendant entered upon the land in controversy under Dr. E. J. Hallam and the appellee Wade, and that he had never given to either of them, or to any one holding their title, notice of his intention to repudiate their title, therefore he could not recover under his plea of ten years limitation; (2) that the evidence showed that appellant entered upon the land in controversy under appellee J. W. Wade and E. J. Hallam, and if the jury believed the appellant canceled his contract with Coyner and told Coyner he intended to hold said land, and if they further believed that Coyner at the time of such cancellation was not the agent of either Wade or Hallam, then notice to Coyner that appellant had repudiated the title of Wade and Hallam, would not be notice to either of them, and limitation did not run against them, or either of them, and they should find for plaintiffs; (3) that the uncontradicted evidence showing that the defendant during the entire time which he occupied the land in controversy admitted he was willing to buy a good title to the land, he can not recover on his plea of limitation, and therefore you will find for the plaintiffs. Neither of these charges was warranted by the evidence and they were properly refused. Whatever contract appellant made for the purchase of the land was made with Coyner who represented himself to be the agent of Wade and Hallam, and notice given to him by appellant of the latter's repudiation of such contract, and his intention to hold the land and acquire title thereto by limitation, if any notice under the circumstances was necessary in order to put in motion the statute of limitation, was sufficient notice to Wade and Hallam. That such notice was given Coyner some twenty odd years before the institution of this suit seems to have been conclusively established by the evidence.

Again, whether appellant held adverse possession of the land, claiming it as his own, was, to say the least of it, a question of fact for the determination of the jury. We do not understand that the uncontradicted evidence showed that he was merely in possession of the land holding it with a view of buying from the owner whenever an opportunity for him to do so was presented. While, in one place, it appears that appellant testified that he had said during his occupancy of the land that he would be willing to pay anybody for the land who would make him a good title, yet his testimony, taken as a whole, is clearly subject to the construction that his possession was adverse, and that by any statement he may have made to the effect that he was willing to pay something to anybody who could make him a good title, he meant a paper title which would enable him the more readily to sell the land in the event he should desire to do so.

224    TEXAS CIVIL APPEALS REPORTS, VOL. 63.    [December,

It follows from what has been said that in the opinion of this court the judgment of the District Court should be reversed; and appellant insists that it should be reversed and judgment rendered for appellant. We do not, however, feel authorized to say that the case has been fully developed; and in such case, even though the trial court may have been warranted in instructing a verdict, it has been the uniform practice of this court to reverse and remand for another trial.

The judgment of the court below is, therefore, reversed and the cause remanded.

*Reversed and remanded.*