DUPUY et al. v. DICKS et al. (No. 7770.)

(Court of Civil Appeals of Texas. Galveston. Dec. 4, 1919. Rehearing Denied Jan. 8, 1920.)

1. ADVERSE POSSESSION ⊂⊃27—RUNNING OF FIVE-YEAR STATUTE VESTS TITLE.

Evidence of the possession of plaintiff's predecessors, which continued under color of title for five years prior to the suspension of the statute on January 28, 1861, having been accompanied by payment of taxes on the land, *held* to show adverse possession.

2. ADVERSE POSSESSION ⊂⊃71(2)—HUSBAND AND WIFE ⊂⊃194—DEED SUFFICIENT AS COLOR OF TITLE THOUGH WIFE FAILED TO ACKNOWLEDGE IT.

Where a duly recorded deed conveying land was signed by husband and wife, though it did not appear that the wife was examined privily and apart from her husband, such conveyance is sufficient color of title to support a claim of title by limitations under the five-year statute, though the property being the separate property of the wife, the conveyance was void.

**3. ADVERSE POSSESSION ⊜82—NECESSITY OF RECORDING A DEED TO CLAIM UNDER FIVE-YEAR STATUTE.**

Where one claiming under color of title conveyed the land, but the deed to the grantee, who was placed in possession, was not recorded for nearly a year, the failure to record the deed broke the chain of possession, and the grantor's previous possession could not be counted in making up the five-year period, though the land was shortly thereafter reconveyed to him.

**4. ADVERSE POSSESSION ⊜82—FIVE YEARS' POSSESSION BROKEN BY FAILURE TO RECORD DEED NOT CONTINUED BECAUSE GRANTOR RESERVED LIEN.**

Where the grantee of one who entered on land under color of title and held possession for some time failed to record his deed for about a year, the continuity of possession was broken and the running of the statute stopped, even though the grantor had a vendor's lien on the land for the purchase price, and it was subsequently reconveyed to him.

Appeal from District Court, Anderson County; John S. Prince, Judge.

Trespass to try title by Mrs. Georgia K. Dicks and another against J. A. Dupuy, individually, and as executor of the will of A. G. Dupuy. From a judgment for plaintiffs, defendant appeals. Affirmed.

A. G. Greenwood, of Palestine, for appellant.

Campbell & Sewell, of Palestine, for appellees.

PLEASANTS, C. J. This is an action of trespass to try title brought by Mrs. Georgia Kirksey Dicks against appellant, J. A. Dupuy, in his individual capacity, and as executor of the will of A. G. Dupuy, deceased. The land involved in the suit is a tract of 160 acres, a part of the Francis Bettic league, in Anderson county, and known and designated as lot No. 7 in the partition of the lands on said league belonging to the estate of Isaac Kirksey, deceased, as shown in the decree partitioning said lands recorded in volume J, p. 195, of the Probate Minutes of the county court of Anderson county. In addition to the usual allegations in a suit of trespass to try title the petition alleges title in plaintiff Mrs. Dicks under the three, five, and ten year statutes of limitation.

The defendant answered by plea of not guilty and also pleaded the statute of limitations of five years.

The trial in the court below without a jury resulted in a judgment in favor of plaintiff for the land in controversy.

It was agreed upon the trial that on March 3, 1851, the title to the land in controversy was acquired by Ann P. Allbright. On April 4, 1851, William Allbright and his said wife, Ann, conveyed the land to Isaac Kirksey for a consideration of $4,605. The deed conveying the land was sufficient in all respects, except that the acknowledgement of Mrs. Allbright was defective in failing to recite that she was examined privily and apart from her husband. The acknowledgment of William Allbright was in proper form. This deed was recorded in the deed records of Anderson county on the day of its date.

The evidence sustains the following additional conclusions of fact:

"That after the execution and delivery of above deed Wm. Allbright lived until December 28, 1878, on which date he died five miles west of Crockett, in Houston county, Tex., and that Ann P. Allbright died in Houston county on September 13, 1888.

"That Isaac Kirksey went into actual possession of said land after the execution of said deed and cultivated it through overseers and his sons, which occupancy and possession was continuous with the payment of taxes for about 20 years, and that this occupancy and possession was adverse to every one.

"That while he was in possession thereof, in the fall of 1856, Dr. J. I. Kirksey, for his father, Isaac Kirksey, paid to Mrs. Ann P. Allbright, the grantee in said deed $1,000 on the purchase money for said land; same being the last payment for said land. At that time Mrs. Allbright lived at Alabama crossing, on Trinity river, in Houston county, and that Houston county adjoins for many miles the southern boundary of Anderson county.

"That neither Wm. Allbright, Ann P. Allbright, or any of their heirs have ever asserted title or claim to said land since the date of said deed, April 4, 1851.

"That plaintiff has a perfect and complete chain of title regular in all respects from and under Isaac Kirksey and paid taxes on the land from 1885 to 1890, inclusive, and all taxes are shown to have been paid thereon prior to 1885, but the tax records are destroyed and it cannot be ascertained therefrom who paid the taxes prior to 1885.

"That on August 30, 1910, one M. E. McKinzie executed and delivered to J. A. Wolverton an instrument by which he bargained, sold, quitclaimed, and released unto J. A. Wolverton all his right, title, interest, and estate in the land sued for, with a habendum clause as follows: 'To have and to hold the above-described premises unto the said J. A. Wolverton, his heirs and assigns forever.'

"Said instrument was not filed for record until December 16, 1910.

"That J. A. Wolverton went into possession of the land, and he, Wolverton, so testified, under the instrument from McKinzie, for the sole purpose of acquiring title by limitation. That both McKinzie and Wolverton were trespassers and had no title or claim of title or interest whatsoever in and to the land and were strangers to plaintiff's title.

"That on February 12, 1913, J. A. Wolverton conveyed by general warranty deeds, sufficient in every respect to convey the title out of Wolverton, to G. R. Hogg 120 acres, and to W. W. Webb the remaining 40 acres of the land sued for, and then ceased and surrendered

---

⊜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

his occupancy, possession, and claim of ownership to the lands, and testified he was not claiming same after his deed to Hogg and Webb, and Hogg and Webb took possession, claiming the land under the deeds from Wolverton and not otherwise.

"Neither of the deeds from Wolverton to Hogg and Webb were filed for record until December 24, 1913.

"That the character of the possession of Hogg and Webb was such that if the same had continued for the period of five years from the date of the recording of their deeds it would have met the requirements of the five-year statute of limitation.

"That on August 30, 1913, Hogg and Webb, by separate general warranty deeds, for a recited consideration in said deeds, respectively, of $150 cash, and the cancellation of a $900 note of each of them given to Wolverton for the purchase money for the lands, conveyed the land to said Wolverton.

"Deeds from Hogg and Webb to Wolverton dated August 30, 1913, were not filed for record nor recorded in the deed records of Anderson county, where the land is located, until December 24, 1913.

"That from the date of the deeds from Hogg and Webb to Wolverton, above, the character of Wolverton's possession, claim of title, etc., was such, until November 8, 1913, that if continued, with payment of taxes, for a period of five years prior to the filing of this suit from the date of the recording of his deed, it would have been sufficient to meet the requirements of the five-year statute of limitation.

"That on November 8, 1913, J. A. Wolverton, by general warranty deed, but which was not recorded until December 24, 1913, conveyed the land sued for to J. A. Dupuy and M. E. Dupuy, executors of the will of A. G. Dupuy, deceased.

"That on November 8, 1913, defendant took possession of the land, and the character of his possession, occupancy, and claim of title was such, up to the date of the filing of this suit, November 15, 1916, that if continued for a period of five years from the date of the recording of said deed, which was not recorded until December 24, 1913, and prior to the filing of this suit, it would have been sufficient to meet the requirements of the five-year statute of limitation."

We shall dispose of the questions raised by appellants in inverse order to that in which they are presented in the brief, and will not set out the several assignments of error, nor discuss them in detail.

[1] We agree with the trial judge that the facts above stated entitled plaintiffs to a judgment on their claim of title by limitation.

The evidence is sufficient to sustain the finding that Isaac Kirksey took possession of the land after his purchase from William and Ann Allbright, and he and those holding under him held exclusive adverse possession, cultivating, using, and enjoying the premises, and paying all taxes thereon, for more than ten years.

Dr. J. E. Kirksey, son of Isaac Kirksey, testified:

"My father put negroes on part of the land purchased by him from Wm. Allbright and wife, Ann P. Allbright, on the Francis Bettic league, in Anderson county, Tex., and my brother, Granville Kirksey, took possession of it and put an overseer over them and cultivated same until October, 1855, when he died. I then took charge of it and controlled it until I went into the Confederate army in June, 1862; then my brother, Dr. W. S. A. Kirksey, took charge of it and kept it until 1867, when my brother-in-law, Dan Rather, took charge of it. This occupancy was continuous with the payment of taxes, for more than ten years."

This testimony is uncontradicted, and while it is not definite in the statement of the time the possession began, nor as to the character of cultivation and use of the land after 1855, the statement does show with certainty that the cultivation of the land by Isaac Kirksey began prior to 1855, and the reasonable inference from the witness' statement that after his father's death in 1855 he took charge and controlled the property until he went into the Confederate army in 1862 is that he continued the use and cultivation of the land which had been begun prior to his father's death, and that the subsequent possession and occupancy of the property by his brother and brother-in-law was of the same character.

This possession and occupancy of the land by the Kirkseys having covered a period of five consecutive years prior to the suspension of the statute on January 28, 1861, and having been accompanied by the payment of taxes on the land and under a deed duly recorded, the title became vested in the Kirksey estate.

[2] We think the recorded deed from Wm. and Ann Allbright was such a duly recorded deed to the land as would support a plea of limitation of five years. It was in all respects a sufficient deed and acknowledgment as to Wm. Allbright, and as such was entitled to registration. It does recite, for the purpose of identifying the land conveyed, that it was a portion of the land partitioned and apportioned by the county court of Houston county to the said Ann Allbright, late widow of Thomas R. Townsend, and deeded to her by Wm. Allbright, administrator of the estate of said Townsend, by deed of date March 3, 1851, in pursuance of an order of said court made in October, 1850. It is not a necessary inference from this recital that the land was the separate property of Ann Allbright at the time this deed was made, or that it was her homestead, and if it had been neither the deed of Wm. Allbright would have passed the title.

It now appears that it was the separate property of the wife at the time the deed was made, and her acknowledgment being fatally defective the deed was void and passed no title; but notwithstanding this fact, such

deed must be held sufficient to support the plea of limitation.

In discussing this question our Supreme Court in the case of Roseborough v. Cook, 108 Tex. 364, 194 S. W. 131, say:

"It is thus clear that a deed under the law governing five years' limitation has a character distinct from that of an effectual muniment of title. For the purpose of such limitation. it performs an office unrelated to title and although as a conveyance of title it may be futile. That office is simply to aid the possession as a means of notice of the adverse claim to the land. The law of limitation of actions for land is founded upon notice. The title by limitation ripens, primarily, only because, in such manner and for such period of time as the different statutes require, notice is given of the hostile claim. Under the three-year statute, it is afforded by possession under title or color of title. Under the ten-year statute, simply by possession. And under the five-year statute it is given by possession, the payment of taxes, and the registration of a naked deed. It is not the character of the deed as a conveyance of title which, under the five-year statute, helps to put limitation in motion. It assists the operation of limitation under that statute merely because of the notice given of the adverse claim by its registration as an instrument, which purports to convey, not the title, but the land."

It is not essential for the support of the plea of limitation that the deed under which the land is claimed and held should in fact convey title; all that is required is an instrument in the form of a deed purporting to convey the land, and not void upon its face. Wofford v. McKinna, 23 Tex. 36, 76 Am. Dec. 53; Schleicher v. Gatlin, 85 Tex. 270, 20 S. W. 120.

We think the deed in question meets this requirement. Davis v. Howe, 213 S. W. 609.

[3] The trial court did not err in finding against appellant on her plea of limitation of five years. The availability of the statute which began to run in favor of Wolverton when he recorded his deed from McKinzie and took possession of the land was interrupted by Hogg and Webb allowing their deeds from Wolverton to them to remain unrecorded from February 12, 1913, to December 24, 1913, and was again interrupted by the failure of Wolverton to record the deeds from Hogg and Webb reconveying the land to him for about four months after their execution. Wolverton's adverse possession did not begin until August 30, 1910; this suit was filed in 1916, and in order to get five years' adverse possession in defendants and those under whom they claim Wolverton and Hogg and Webb must have, during the entire time of their occupancy, been claiming under a recorded deed.

It is well settled law that title cannot be acquired under the five-year statute of limitation by adverse possession unaccompanied by a recorded deed to the person in possession and claiming the land. The failure of Hogg and Webb to record their deeds from Wolverton within a reasonable time after their execution destroyed the previous adverse possession of Wolverton, and the failure of Wolverton to record his deeds of reconveyance to him from Hogg and Webb within a reasonable time destroyed the previous adverse possession of his said grantors. Porter v. Chronister, 58 Tex. 55; Cook v. Dennis, 61 Tex. 248; Gillum v. Fuqua, 61 S. W. 938; Dunn v. Taylor, 147 S. W. 311; Wm. Cameron & Co. v. Collier, 153 S. W. 1178.

[4] Appellants' contention that the possession of Hogg and Webb was the possession of Wolverton because by reversing a vendor's lien in his deed to them the superior title remained in Wolverton, and that Hogg and Webb were holding under and for him, and, his deed being duly recorded, he was entitled under the five-year statute to the benefit of their possession, cannot be sustained. The superior title, remaining in Wolverton by reason of his retention of the vendor's lien, was superior only for the purpose and to the extent of protecting him in the payment of the purchase money, and could be asserted for no other purpose, and only in event of the failure of his vendees to pay the purchase money. After he conveyed the land to them he could not be regarded as its owner so long as the unpaid purchase money was undue, nor until he had exercised his right to cancel the contract of sale. He did not claim to own the land during the time it was held by Hogg and Webb. He testified:

"After I sold the land to Hogg and Webb on February 12, 1913, they went into possession under deeds from me and held such possession for themselves and claimed the land as their own and were not holding it for me up to August 30, 1913, when they conveyed it back to me.

"I was not claiming the title to the land while Hogg and Webb were in possession of it, from the time I made the deeds to them on February 12, 1913, up to August 30, 1913, when they conveyed the land back to me."

If we are correct in the conclusions above stated upon the issues of limitation raised by the record, the other questions presented become immaterial and need not be discussed.

We have considered each of appellants' assignments of error, and in our opinion none of them should be sustained. It follows that the judgment of the trial court should be affirmed; and it has been so ordered.

Affirmed.