**GIBBS et al. v. LESTER et al.** (No. 3324.)

Court of Civil Appeals of Texas. Amarillo. Jan. 22, 1930.

Rehearing Denied Feb. 19, 1930.

Cooper & Lumpkin and Works & Bassett, all of Amarillo, for appellants.

Hoover, Hoover & Cussen, of Canadian, and Trulove & Frazee, of Amarillo, for appellees.

HALL, C. J. This is an action of trespass to try title and for damages, brought by appellants to recover the John Gibbs survey in Hutchinson county. The appellants, other than A. A. Lumpkin and A. S. Burleson, claim the land as the heirs of John Gibbs. Lump-

kin and Burleson claim a part of the land as the vendees of such heirs. Appellants' claim is based upon a land certificate, numbered 159, issued by the Adjutant General of the State of Texas on April 9, 1853. This certificate was issued by authority of the Act of Feb. 9, 1850 (3 Gammels Laws of Texas, p. 153). A patent based upon this certificate was issued to John Gibbs on May 7, 1875, granting the land described in the petition. The certificate was issued to John Gibbs under the provisions of said act, because he was with Fannin at the massacre of Goliad. Lumpkin and Burleson claim an undivided one-half interest in the survey through R. H. Kirby, who, acting under certain powers of attorney executed by the heirs of Gibbs, filed a suit which resulted in a judgment in favor of the plaintiffs on April 11, 1888. By the terms of the judgment, plaintiff recovered the lands against F. W. McGuire and others, and by mesne conveyances Lumpkin and Burleson acquired their undivided one-half interest. Save and except Lumpkin and Burleson, the appellants claimed an undivided one-half interest in virtue of being the sole and only heirs at law of John Gibbs, deceased.

The appellees, who were defendants below, claimed to have acquired title under the provisions of the three, five, ten, and twenty-five years' statutes of limitation. It appears that the defense based upon the three and the twenty-five years' statutes of limitation was abandoned at the trial, in that no proof was offered in support thereof.

Upon the trial, the court defined what constituted title under the statutes of five and ten years' limitation, what was meant by peaceable and adverse possession, and submitted certain issues of fact, in response to which the jury found that appellants and the defendant A. P. Gentry were the heirs, and vendees of the heirs, of the identical John Gibbs mentioned in land certificate No. 159. That the rental value of the land from June 26, 1926, to date, was $1,250. That John Glenn had peaceable and adverse possession of the land in controversy, cultivating, using, and enjoying the same and regularly paying taxes thereon continuously for a period of five years under a deed duly registered, prior to the filing of this suit. That A. B. Carothers and the vendors under whom he claimed had peaceable and adverse possession of the land, cultivating, using, and enjoying the same and regularly paying all taxes thereon under deeds duly registered, for a period of five years prior to the filing of this suit. That A. B. Carothers and his vendors and vendees have had peaceable and adverse possession of the lands in controversy, cultivating, using, enjoying, and claiming the same continuously for a period of ten years before the filing of this suit.

Based upon the verdict, the court rendered a judgment that the appellants take nothing and that the appellees A. B. Carothers, L. T. Lester, and Mary Elizabeth Lester recover title and possession of the land.

The jury having found in appellees' favor upon the issues of five and ten years' limitation, appellants attack these findings, insisting:

(1) That in certain correspondence between Burleson and Glenn, while the latter was in possession of and claiming the land, he had admitted that Burleson had title to one-half of the land, thus destroying the hostile character of his possession to that one-half;

(2) That Carothers had, during the alleged limitation period, filed two suits relating to the land against appellants, thereby interrupting the running of the statutes;

(3) That Glenn failed to pay the taxes for the year 1904; and,

(4) That appellees were not claiming under deeds duly registered.

We will consider these contentions in the order named.

■ The first contention is that the court erred in excluding certain correspondence between A. S. Burleson and John Glenn. These letters were offered for the purpose of showing that Glenn, before his limitation title had matured, admitted that Burleson owned an interest in the land. The letters were objected to because they were irrelevant and immaterial and at most only showed an attempt to settle the difference as to the title.

The first letter was from Burleson to Glenn, dated at Washington City, March 31, 1906, in which Burleson acknowledged receipt of a letter from Glenn dated March 24th. He refers to the fact that Glenn had paid taxes and the expenses of fencing the land, and gives as his opinion that, together with Glenn, they could give a purchaser a good title, and says: "I suggest that in fairness it might be, because of the fencing and taxes paid, that you should have three-fifths of the value of the property and I to take the remaining two-fifths. In your last letter you asked what I was willing to take and how much I was willing to accept for my part of the land. I have that letter of yours now before me. I made in my last letter to you what I thought were fair propositions. You answered in a perfectly fair statement and suggested the payment of money expended for taxes and fences, which I confess had not occurred to me," etc.

It appears that Glenn had purchased the property from J. H. Truitt on April 16, 1902, filing his deed for record on December 9, 1903. He had fenced the land with three barbed wires during the early part of the year 1904. In 1906 he conveyed the land to R. W. Wright in exchange for some Amarillo property. Upon finding that the title was not perfectly clear, by agreement, that trade was rescinded and Wright reconveyed the land to Glenn on February 9, 1906, with the un-

derstanding that Glenn should perfect his title by suit or compromise within two years and then reconvey the property to Wright.

Glenn replied to the letter of Burleson mentioned above by letter dated at Miami, Tex., April 30, 1906, in which he states, in part, as follows:

"Your proposition on taxes and fence cost all O. K. You state you have not realized anything out of this property. I have got some lease money on some and will be willing to divide same. If you gain suit, I can not *complimise* as that would let my warrantor loose. * * * It may be that if you would file suit for land, you and my warrantor could *complimise* same. It is not my fight but my warrantor, he said, will defend title. I think if you would file suit then he would *except* title from both of us."

The third letter is from Glenn to Burleson dated at Miami, May 19, 1906, in which he states that he has seen his attorneys who were surprised at Burleson wanting Glenn to sue him. He continued:

"I have no *fite* to make with you. The only way for me to hold my warrantor is for you to sue for possession as I have before stated. I think you have made fair in *complimise* but as I have stated I can not entertain proposition for *complimise*. I agree with you in saying it will be regretted by both of us if Amarillo *traid* is let go by."

As stated by the Supreme Court in Warren v. Frederichs, 83 Tex. 384, 18 S. W. 750, 752: "A single lisp of acknowledgment by the defendant that he claims no title fastens a character upon his possession which makes it unavailable for ages."

It will be observed that he agrees to divide the rents which he received with Burleson, and a promise to pay rent has been construed to mean a recognition or acknowledgment of the recipient's title. Gordon v. Gordon (Tex. Civ. App.) 224 S. W. 716. Whether the language quoted above was an acknowledgment of Burleson's interest in the land, or an effort on the part of Glenn to buy his peace, is a question of fact which possibly should have been submitted to the jury. Thompson v. Moor (Tex. Com. App.) 14 S.W.(2d) 803; Houston Oil Co. v. Pullen (Tex. Com. App.) 272 S. W. 439; Davis v. Cisneros (Tex. Civ. App.) 220 S. W. 298; Nugent v. Wade, 63 Tex. Civ. App. 218, 132 S. W. 883. But if the possession and claims of Glenn and his vendees since are found to be adverse and hostile for the requisite time, this would not constitute reversible error.

■ The next contention is that the court erred in excluding, as evidence, the proceedings in two suits which had been filed by Carothers against Burleson, Lumpkin, and other appellants, to recover title and possession of the land in trespass to try title.

The record discloses that in October, 1909, Carothers purchased the Gibbs survey of land from John Glenn. He filed his first suit in 1914 against Burleson et al. in Hutchinson county. The case was transferred to Hall county and in 1915 was dismissed by Carothers. In 1916 Carothers again filed suit against the appellants involving the Gibbs land. This case remained upon the docket of the district court of Hutchinson county until Carothers dismissed it in 1924.

Appellees objected to the introduction, in evidence, of the pleadings and orders in said cases for the reason that both suits had been voluntarily dismissed by Carothers and neither of them had ever been prosecuted to final judgment.

We think the court correctly excluded this evidence. The Supreme Court of Texas has uniformly held that an adverse suit to recover real estate does not interrupt the running of limitation unless it is duly prosecuted to final judgment, whatever may be the rule in other jurisdictions. 37 C. J. 1053, § 475; Raley v. Sullivan (Tex. Com. App.) 207 S. W. 906; Herr v. Rodriguez (Tex. Civ. App.) 50 S. W. 487; Lott v. Dashiell (Tex. Civ. App.) 233 S. W. 1104; Conn v. Houston Oil Co. (Tex. Civ. App.) 218 S. W. 137; Mitchell v. Thomas (Tex. Civ. App.) 172 S. W. 715; Shields v. Boone, 22 Tex. 193; Chambers v. Shaw, 23 Tex. 165; Highsmith v. Ussery, 25 Tex. Supp. 96; Hughes v. Lane, 25 Tex. 356; Bigham v. Talbot, 63 Tex. 271; Flanagan v. Pearson, 61 Tex. 302; Connoly v. Hammond, 58 Tex. 11; Simkins Title by Limitation, 34; Cobb v. Robertson, 99 Tex. 138, 86 S. W. 746, 87 S. W. 1148, 122 Am. St. Rep. 609; Burroughs v. Smith (Tex. Civ. App.) 8 S.W.(2d) 801.

■ R. S. art. 5509, provides that the payment of taxes upon land is a condition precedent to the perfection of a title by limitation under the five years statute. In his general charge the court submitted this issue: "Did John Glenn have peaceable and adverse possession of the land in controversy, cultivating, using, or enjoying the same and regularly paying all taxes thereon continuously for a period of five years at and prior to the filing of this suit, under deed duly registered?"

The appellants objected to this issue because it appeared from the undisputed testimony that John Glenn failed to pay the taxes during the year 1904 and introduced in evidence a redemption tax receipt which showed that the taxes became delinquent for the year 1904 and were not paid until September 6, 1905. Appellants insist the objection to the issue should have been sustained.

"The current of authority establishes that each of the payments must have been made before the taxes had become delinquent." 2 Tex. Jur. 281; Turner v. Dinwiddie (Tex.

Civ. App.) 276 S. W. 444; Baker v. Fogle, 110 Tex. 301, 217 S. W. 141, 219 S. W. 450; Houston Oil Co. v. Howard (Tex. Com. App.) 294 S. W. 848, Id. (Tex. Civ. App.) 256 S. W. 340; Houston Oil Co. v. Jordan (Tex. Com. App.) 231 S. W. 320; Allison v. Baird Development Co. (Tex. Civ. App.) 292 S. W. 956; Ammerman v. Bourland (Tex. Civ. App.) 230 S. W. 804, 808.

While the rule just stated seems to prevail in Texas, the appellees insist that the failure of Glenn to pay the taxes during 1904 becomes immaterial for the reason that it is shown without dispute that Glenn regularly paid all the taxes on all of the land for the years 1905 to 1909, inclusive, and that he sold the land to Carothers on October 20, 1909, who, with his vendees, paid all taxes thereafter promptly until the filing of this suit.

We think the appellees' contention is sound. While Glenn's failure to pay the taxes for one year interrupted the running of the statute, the record sustains the contention that he did pay the taxes for the years 1905 to 1909, inclusive, and that those claiming under him paid the taxes regularly up to the filing of this suit, so if the court erred in submitting issue No. 3, the error is harmless.

■ The next proposition is that where one claims land under the five years' statute, it is both necessary and essential for him to claim under a deed or deeds duly registered in the county where the land is situated, and that the court erred in submitting special issue No. 3 in so far as it relates to the matter now under consideration, because Glenn was not claiming title to the land in controversy under a deed or deeds duly registered.

As heretofore stated, the land was conveyed to Glenn by Truitt on April 16, 1902, by a deed which was not filed for record until December 9, 1903. January 23, 1906, Glenn and wife conveyed the property to R. W. Wright. This deed it seems was filed for record February 1, 1906. On February 9, thereafter, Wright reconveyed the land to Glenn by deed of that date, which was not filed for record until the 30th day of January, 1908. Glenn's explanation of why this deed was not recorded sooner is that he did not want to send it through the mails for fear it would be lost, so he kept it until he could and did bring it to Hutchinson county in person. The jury seems to have accepted his explanation. It appears from the record that after the exchange of deeds, it was decided that Glenn's title was defective, and Glenn and Wright then entered into a written agreement which recites that after Glenn's title was found to be defective, they had, on the 9th day of February, 1906, reconveyed each to the other, by quitclaim deeds, the property formerly owned by each, and the contract further stipulated that the matter was to remain in status quo for two years, if necessary, to enable Glenn to perfect the title to his land, and in the event Glenn should fail to perfect his title, that Wright should be free from and after that date to dispose of his lots in Amarillo at his option.

We think the legal effect of these transactions is to divest Glenn of his title at the date of his conveyance to Wright, at least until Wright reconveyed to him, and having been divested of title during such period, however brief, the period of limitation under which he seeks to hold, beginning with the record of his deed from Truitt on December 9, 1903, was interrupted, and if he is entitled to claim under the five years' statute of limitation, the period must begin with the record on January 30, 1908, of the reconveyance from Wright. Daugherty v. Manning (Tex. Civ. App.) 221 S. W. 983; Dupuy v. Dicks (Tex. Civ. App.) 218 S. W. 49; Dunn v. Taylor (Tex. Civ. App.) 143 S. W. 311; Id. (Tex. Civ. App.) 147 S. W. 287; Cocke v. Texas & N. O. R. Co., 46 Tex. Civ. App. 363, 103 S. W. 407.

If the beginning of the period of limitation is considered from January 30, 1908, when Glenn recorded his reconveyance from Wright, the failure to record it within a short time after its execution becomes immaterial, except in so far as it breaks the continuity of possession prior to its recordation.

The appellants offered in evidence a judgment, together with part of the pleadings of the parties in the case of William Gibbs et al. v. F. W. McGuire et al., to show that certain of the plaintiffs had recovered against McGuire and one John Behrens, the Gibbs tract of land in question. These documents were offered in support of the appellants' contention that they were the heirs of John Gibbs, and they insist that because pedigree, relationship, heirship, and the like may be established by hearsay testimony, the pleadings and judgment in that case were admissible upon such issue.

There is a want of harmony in the authorities upon the question. It seems that appellants' contention is supported by 2 Freeman on Judgments (5th Ed.) 2180, 2181; 2 Black on Judgments, § 106, and is probably supported in a measure by Sawyer v. Boyle, 21 Tex. 28, and Houston Oil Co. v. Hayden, 104 Tex. 175, 135 S. W. 1149. On the other hand, the Supreme Court has held that such a judgment is inadmissible against any one not a party to the suit. McCamant v. Roberts, 66 Tex. 260, 1 S. W. 260; Randell v. Robinson (Tex. Civ. App.) 146 S. W. 717; Pratt v. Jones, 64 Tex. 696; Freeman v. Hawkins, 77 Tex. 498, 14 S. W. 364, 19 Am. St. Rep. 769.

While the courts did not discuss the admissibility of such testimony under the above-mentioned exception to the hearsay rule, we incline to the opinion that the decisions are

conclusive against appellant's contention and that neither the judgment nor any of the pleadings could be properly admitted against strangers. This matter, however, becomes unimportant if the testimony is sufficient to sustain the findings of the jury upon the issues of limitation of five and ten years.

Appellees contend that even though John Glenn, under whom they held possession, did not meet all the requirements of the statute up to January 1, 1905, from which date all taxes have been regularly paid, the requirements of the statute have been met from that date until October 20, 1909, when he sold the land to Carothers. That Carothers and his vendor, Glenn, have held possession for more than five years in compliance with all of the requirements of the statute from 1905 until Carothers sold to Davis on January 1, 1917, a period of twelve years.

The appellees further contend that Carothers, his vendors and vendees, had and held possession for more than ten years prior to the filing of this suit, meeting all of the requirements of the statute, in that Glenn went into possession and fenced the land and began to use the same in January, 1904, which use and possession continued until October 20, 1909, when he sold to Carothers, who in turn used and occupied the land without interruption until April, 1917, when the land was acquired by Lester, who in turn continued to use and occupy it, meeting all of the requirements of the statute, until June 26, 1926, when this suit was filed.

If this statement is sustained by the record, then Glenn, Carothers, and subsequent owners have held the property for a period of twenty-two years, during which any consecutive five or ten years would mature the title under either statute upon which the defense is based.

█ The evidence of the six witnesses who testified with reference to the issues of use, occupancy, and possession is voluminous. In addition to the summaries of this testimony found in the briefs of the parties, we have carefully reviewed the statement of facts, and we think the evidence is sufficient to sustain the findings of the jury and to show that the appellees have perfected title under both the five and ten years' statutes. The evidence presents, of course, only issues of fact, and while it is conflicting, we do not feel authorized to set aside the findings of the jury based upon it.

Appellants' assignments which have not been considered specifically are mere abstractions or multifarious, but they do not present reversible error under the view we take of the case.

The original opinion is withdrawn.

We deem it unnecessary to discuss the cross-assignments urged by the appellees.

We find no reversible error, and the judgment is affirmed.

JACKSON, J., disqualified, not sitting.