**SOUTHWESTERN LUMBER CO. OF NEW JERSEY v. ALLISON.** (No. 1062.)

(Court of Civil Appeals of Texas. Beaumont. May 12, 1924. Rehearing Denied May 21, 1924.)

**1. Adverse possession ⊂⇒27—Evidence held to show land described in answer was same land inclosed and used as pasture.**

Independently of plat attached to defendant's brief, and which was read at trial, though not formally offered in evidence, evidence *held* to show that land inclosed and occupied by defendant as pasture was the land claimed and described by him in his answer.

**2. Adverse possession ⊂⇒50—Defendant's admission of record title in plaintiff held not abandonment of defense of limitation.**

Defendant's admission that record title was in plaintiff *held* not abandonment of his defense of limitation of 10 years, where admission was made without intention to abandon defense, and was so treated by parties in trial court.

**3. Adverse possession ⊂⇒50—Taking as notary acknowledgments of tenancy in favor of record owner held not admission precluding assertion of adverse possession.**

Defendant's act as notary public in taking acknowledgments of tenancy from persons in favor of record owner to tract of land, in which part used by defendant as pasture was included, *held* not such admission by him of record owner's ownership as destroyed his defense of limitation; none of persons making acknowledgments asserting any claim to pasture in behalf of record owner.

**4. Trial ⊂⇒232(5)—Court's definitions of adverse and peaceable possession in language of statute held sufficient.**

Trial court's definitions of adverse possession and peaceable possession in the language of the statute *held* sufficient.

**5. Appeal and error ⊂⇒216(2)—Plaintiff could not predicate error on insufficiency of definitions in absence of offer of correct definitions.**

Plaintiff, who failed to present to trial court more accurate definitions of adverse and peaceable possession than those given, could not predicate error on definitions given, even if they were insufficient.

**6. Trial ⊂⇒350(3)—Submission of special issue as to entry by former record owner held properly refused.**

In trespass to try title, in which defendant set up limitation of 10 years, beginning July 3, 1909, refusal to submit special issue whether during the 10 years former record owner made actual entry upon land, *held* proper, where such owner conveyed its title on July 3, 1909.

**7. Adverse possession ⊂⇒57 — Evidence held not to show interruption of adverse possession by claimant.**

Evidence *held* not to show that former record owner, after conveying land became tenant of grantee, or that it or any one for it took actual possession of any portion of inclosed pasture claimed by defendant under 10-year stat-

ute, or objected to defendant's exclusive use and control of it.

**8. Trial ⊂⇒141—Court may assume establishment of issue proved by undisputed evidence.**

Where some material issue is proved without contradiction, especially by disinterested witnesses, court may assume issue is established without submitting it to jury.

**9. Trial ⊂⇒350(3)—Submission of issue as to sufficiency of fence around pasture held properly refused.**

Where there was no dispute as to the character and sufficiency of the fence around land used as a pasture, and claimed by adverse possession for 10 years, the trial court properly refused to submit an issue as to that matter.

**10. Adverse possession ⊂⇒116(2)—Charge as to sufficiency of fence around pasture land held sufficient.**

Special charge given as to sufficiency of fence around pasture land, claimed adversely under 10-year statute, *held* sufficient.

**11. Adverse possession ⊂⇒114(1) — Evidence held to support plea of limitation of 10 years.**

Evidence *held* sufficient to establish defendant's plea of limitation of 10 years.

Appeal from District Court, Jasper County; V. H. Stark, Judge.

Action by the Southwestern Lumber Company of New Jersey against J. V. Allison. Judgment for defendant, and plaintiff appeals. Affirmed.

Andrews, Streetman, Logue & Mobley, of Houston, for appellant.

Smith & Lanier, of Jasper, for appellee.

HIGHTOWER, C. J. This is an action of trespass to try title by appellant, Southwestern Lumber Company of New Jersey, against the appellee, J. V. Allison, involving a tract of 240 acres of land, a part of section 66, Houston & Texas Central Railway Company survey in Jasper county. The defendant, Allison, answered by general denial, plea of not guilty, and by special plea of limitation of 10 years as to approximately 102 acres of the land involved, which the answer described by metes and bounds.

The case was tried with a jury, and the court, after defining "adverse possession" and "peaceable possession," submitted to the jury one special issue, which was as follows:

"Did J. V. Allison claim the land described in his answer, and occupy, use, and enjoy the same peaceably and adversely for 10 consecutive years prior to the 11th day of May, A. D. 1922, and subsequent to the 3d day of July, 1909? Answer this question 'Yes' or 'No,' as you find the fact to be."

The jury answered: "Yes." Upon this verdict judgment was rendered in favor of defendant for the land described in his answer, and from that judgment the plaintiff has prosecuted this appeal.

[1] At the conclusion of the evidence in the trial court appellant requested the court to peremptorily instruct a verdict in its favor, which was refused, and it is here contended by appellant that this was error for three reasons. The first contention is that there was no evidence showing that the land occupied by defendant was the land described and claimed in his answer. As we have stated, the defendant's answer specifically described by metes and bounds approximately 102 acres of the land sued for by appellant. The evidence in this case shows that defendant did not live upon the tract of land described in his answer, but instead lived on another tract near by, but had actual possession of the land described in his answer, and had it inclosed by a wire fence from about the 1st of October, 1907, up to the time this suit was filed, which was May 11, 1922. It is true, as contended by appellant, that no map or plat of any kind was formally offered in evidence showing the identity of the land inclosed and occupied by defendant with that described in his answer, but it is clear from the record that a plat of the inclosed land was used in the interrogation of the witnesses upon the trial, and it is very clear from the record as a whole that the land inclosed and occupied by defendant was the same as that specifically described in his answer, and this is so whether or not we consider the plat which is attached to appellee's brief, and which was used upon the trial, though not formally offered in evidence. Counsel for appellant cite in support of their contention on this point the case of Giddings v. Fischer, 97 Tex. 184, 77 S. W. 209. We have carefully read the cited case, but fail to see that it supports appellant's contention here. In the Giddings Case, the plaintiff sued for a tract of 524 acres of land in Hardin county, which he fully described in his petition, and the defendant interposed the defense of limitation as to 160 acres of the land, which he undertook to describe specifically by metes and bounds. Upon the trial of the case in the lower court without a jury judgment was rendered in the plaintiff's favor for all the land sued for, with the exception of 5 acres, including the defendant's improvements, and this was awarded to defendant. Upon appeal to the Court of Civil Appeals for the First district the trial court's judgment was reversed, and judgment was rendered in favor of the defendant for the 160 acres of land claimed by him. On writ of error to the Supreme Court the judgment of the Court of Civil Appeals was reversed, and the cause remanded to the trial court. In that case the Supreme Court held, in substance, that the description of the 160 acres of land claimed by defendant, as contained in his answer, was wholly insufficient, and also held that the description contained in the judgment of the Court of Civil Appeals was wholly insufficient as to the land occupied and claimed by defendant. It is true the Supreme Court in that case, in demonstrating the correctness of its conclusion, mentioned the fact that no map or plat of the land described in the answer or in the judgment was introduced upon the trial, but it is clear that the Supreme Court did not mean to say that it was necessary in such cases that a map or plat describing the land claimed by the defendant would have to be introduced so as to show that the land occupied by him was identical with that described in his answer. The testimony in this case of all the witnesses makes it very clear that the land described in the defendant's answer was the same land which he had inclosed and had used as a pasture since October, 1907. We therefore overrule appellant's contention on this point.

[2] The second contention made by appellant is that it was admitted by defendant upon the trial of the case that the record title to the land sued for by appellant was in appellant, and that therefore defendant's defense of limitation was no longer available to him, and his plea of limitation was thereby abandoned.

We find in the statement of facts in this connection the following: "Defendant admitted that the record title is in the plaintiff." This admission came after the plaintiff had introduced its evidence of title, and now appellant contends that by this admission defendant abandoned his plea of limitation, and, the record title having been admitted to be in appellant, it was entitled to an instructed verdict. We cannot agree to this contention. It is very clear that it was only intended by this admission that defendant no longer questioned appellant's record title, but certainly there was no intention to abandon his defense of limitation, nor was it so treated by the litigants in the trial court, for the record shows that after such admission was made, the defendant, without any objection whatever on the part of appellant, proceeded to introduce his evidence in support of his plea of limitation, and it was only an afterthought on the part of appellant that this admission was an abandonment of the defense of limitation. Frost v. Smith (Tex. Civ. App.) 207 S. W. 392; Mason v. Peterson (Tex. Com. App.) 250 S. W. 142.

[3] It is next contended by appellant that, it having been shown upon the trial without dispute that the defendant, in his capacity as a notary public, in November, 1917, certified to four acknowledgments of tenancy by four different men, in which they acknowledged tenancy to J. R. Chapman, appellant's immediate predecessor in title, to a tract of land of 560 acres, a part of section 66, Houston & Texas Central Railway Com-

pany survey, and it having been shown that the land claimed by defendant in this suit is included in said 560-acre tract, appellant, as a matter of law, was entitled to an instructed verdict. It is appellant's contention in this connection that defendant's act in certifying to these acknowledgments had the legal effect to stop the running of limitation in his favor as to the land of which he at that time had actual and exclusive possession. In other words, appellant contends that such act on defendant's part was a recognition and admission by him of Chapman's ownership of the land at that time occupied and theretofore claimed by defendant, and that as a matter of law such act on his part destroyed his adverse possession and prevented its assertion as a defense in this suit.

It is true that in November, 1917, Allison, the defendant, acting as a notary public, did take four acknowledgments of tenancy from four different men in favor of Chapman, who was at that time the record owner, to a tract of 560 acres of land, a part of section 66, Houston & Texas Central Railway Company survey, and it is also true that the land claimed by the defendant in this suit was shown to be included in the 560-acre tract mentioned in the contracts of tenancy. The undisputed proof in this case shows that neither of the men who executed these acknowledgments of tenancy were ever in possession of any portion of the land claimed and occupied by Allison and exclusively inclosed in his pasture. Nor did either of them ever assert any right to or authority over this land in Allison's pasture. As a matter of fact, one of these men testified in the case, and admitted that he had never at any time set up any claim of right to the land in Allison's pasture, but, on the contrary, knew that the land was occupied and claimed by Allison all the time, and it is very clear from his testimony that he asserted no claim for Chapman to the land occupied by Allison and used as a pasture, nor is there anything in this record to indicate that either of the other three men who acknowledged tenancy asserted any claim to Allison's pasture in behalf of Chapman. No authority is cited by appellant sustaining its contention on this point, and we have found none, and think the contention is not tenable, and overrule it. This disposes of appellant's contention that the verdict should have been peremptorily instructed in its favor.

[4, 5] It is further contended by appellant that the court's definitions of "adverse possession" and "peaceable possession" were not full enough as applied to the facts in this case, and that its objection to the court's charge, for that reason, in defining these terms, should have been sustained. Appellant did not ask for a more full or correct definition of those terms, and certainly the court's definition was correct as far as it went, and was a definition of "adverse possession" and "peaceable possession" just as those terms are defined by the statute. Having failed to present to the court fuller or more accurate definitions of "adverse" and "peaceable" possession, appellant cannot reverse this case, even if those terms were not sufficiently defined in the court's charge. We hold, however, that the definition of both terms as given by the court was clearly sufficient upon the facts of this case, and overrule appellant's contention in this connection.

Before proceeding to the disposition of other contentions made by appellant we will briefly show the appellant's chain of title to the land sued for: (1) Patent to R. D. Davis from the state, September 17, 1902; (2) deed from Davis to George Adams, October 6, 1902; (3) deed from Adams to Kirby Lumber Company, December 3, 1902; (4) deed from Kirby Lumber Company to J. R. Chapman, July 3, 1909; (5) all necessary probate proceedings in the estate of J. R. Chapman; (6) deed from Chapman's executors to appellant, June 12, 1920.

[6, 7] Upon the trial of the case appellant's counsel requested the court to submit this special issue:

"Gentlemen of the jury: If you have answered special issue No. 1 submitted to you by the court 'No,' you will not answer the following question, but, if you have answered it 'Yes,' then you will answer this question: During such period of 10 years, if any, when defendant had possession of the pasture, if he had such possession, did tenants, or persons with permission of the Kirby Lumber Company, make actual entry upon the lands within said pasture?"

The court declined to submit this special issue, and this action is assigned as error. We think the court was correct in refusing the issue, for two reasons. In the first place, we have shown that all title to the land in controversy passed out of the Kirby Lumber Company on July 3, 1909, and that company was certainly not the owner of the land at any time after that date. The request for the submission of the issue, however, was based upon appellant's theory that the evidence in this case showed that the Kirby Lumber Company became Chapman's tenant, and as such had possession of the land in controversy, and that the Kirby Lumber Company, or some of its agents, entered upon and took actual possession of the land claimed and inclosed by defendant during the limitation period to which he was confined in the court's charge. It is our conclusion, after careful examination of this record, that there was no proof that the Kirby Lumber Company was ever the tenant and held possession of the land in controver-

sy in this case for Chapman, and it is certainly true that there is no evidence in this record that the Kirby Lumber Company, or anybody for it, ever had actual possession of the land claimed by the defendant, and which he at all times had inclosed and continuously used as a pasture. The only witness who undertook to' testify relative to any contract of tenancy between the Kirby Lumber Company and Chapman was appellant's witness W. O. Grimes. We find in the statement of facts about nine lines of testimony from this witness, which includes everything he testified to. The substance of it is that from about 1909 to 1920 the Kirby Lumber Company "was a tenant of and had permission to use" Chapman's numerous lands in East Texas. During the period of time embraced between the dates just mentioned the evidence shows conclusively and without any particle of dispute that the defendant, Allison, had the land claimed by him securely inclosed by a wire fence and used it continuously for the purpose of pasturing live stock of all kinds, and there is not a particle of testimony, as we see this record, that the Kirby Lumber Company, or any one for it, ever took actual possession of any portion of this inclosed pasture, or ever objected to Allison's exclusive use and control of it. Therefore there was no basis in the evidence in this case for the submission of the requested issue, and the court was correct in refusing it.

[8-10] Upon the trial appellant requested this special issue:

"During such period of 10 years, if any, when defendant had possession of the pasture, if he had such possession, was the fence around such pasture sufficiently substantial to afford reasonable protection against the cattle of the neighborhood?"

The court refused the requested issue, and correctly so, because there was no dispute in the evidence as to the character and sufficiency of the fence around the pasture. All the witnesses who testified on the point, and there were several of them besides the defendant himself, testified positively that the fence was a substantial wire fence, and was kept up at all times by the defendant, and there is not an intimation anywhere in the evidence that the fence was ever out of repair or was insufficient in any respect as an inclosure. Therefore the court should not have submitted the requested issue. The rule is that, where some material issue in the case is proved without contradiction,

especially by disinterested witnesses, the court may assume that the issue is established, without leaving it to the determination of the jury, and that course was correctly pursued in this instance. The court, however, at the request of appellant, in order to guide the jury in its answer to the issue submitted by the court; gave to the jury this special charge:

"In connection with your consideration of special issue No. 1, you will consider the following special charge: The mere occupancy of land by grazing live stock upon it without substantial inclosure or other permanent improvements is not sufficient to support a plea of limitation under our statutes. Unless you find from a preponderance of the evidence that the pasture referred to in the evidence was occupied by defendant for 10 consecutive years between the dates mentioned in said special issue, not only by grazing live stock upon it, but with substantial inclosures around said pasture, or other permanent improvements thereon, you will answer said special issue, 'No.'"

This special charge having been given to the jury by the court, it was sufficient to protect appellant's rights before the jury, even if there had been any contradiction in the evidence as to the sufficiency of the fence. Appellant's assignment in this connection is overruled.

[11] Appellant further contends that the evidence in this case was insufficient to warrant the verdict in favor of defendant establishing his plea of limitation of 10 years. We shall not dwell at length upon this contention. The evidence shows without dispute, in our opinion, that the defendant, Allison, has had the land, awarded him by the judgment in this case, inclosed by a substantial wire fence from about the 1st of October, 1907, up to the trial of this case, and that he has had exclusive possession and control of this land, using it continuously for the purpose of pasturing live stock of all kinds, and has openly and notoriously claimed the land as his own. The evidence further shows without dispute that his claim to this pasture was notorious in the community, and it was known, as the citizens say, as the Allison pasture. This being true, as reflected by the record, we hold that the evidence upon which the jury's verdict is based was amply sufficient to sustain it. Indeed, had the verdict been in favor of appellant, we seriously doubt whether we could have permitted it to stand. This, in effect, disposes of all appellant's contentions, and it follows that the judgment should be affirmed, and it has been so ordered.