SMITH et al. v. ADOUE & LOBIT.

(Court of Civil Appeals of Texas. Galveston. Jan. 8, 1913. Rehearing Denied Jan. 23, 1913.)

1. ADVERSE POSSESSION (§ 85*) — HUSBAND AND WIFE—SEPARATION—LEASE—EVIDENCE.

In an action wherein the wife claimed land by adverse possession, a lease taken by the husband from the other claimant was properly admitted as evidence that the wife had not held adversely, though the evidence was conflicting whether the husband had then abandoned his wife.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 498–503, 656, 660, 668; Dec. Dig. § 85.*]

2. ADVERSE POSSESSION (§ 116*)—HUSBAND AND WIFE—SEPARATION—LEASE.

In an action for land claimed by defendant by adverse possession, where there was a conflict in evidence whether defendant's husband had abandoned her, and the husband had taken a lease on the land, an instruction that, "if you find that defendant's husband had not abandoned her during period of limitation and during that period leased the premises from the plaintiff, you should find for the plaintiff," was proper.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. § 66; Dec. Dig. § 116.*]

3. APPEAL AND ERROR (§ 742*)—ASSIGNMENTS OF ERROR—SUFFICIENCY—RULES OF COURT.

An assignment, that "the court erred in sustaining the demurrer to suggestions of improvements," subjoined by the proposition that "defendant's amended suggestion of improvements was pleaded in accordance with the statutes, and defendant was entitled to their value," followed by the statement that "defendant's first amended suggestion of improvements was in accordance with the statutes of Texas, art. 4813, which ias the present law," cannot be considered, under court rule 31 (142 S. W. xiii), providing that a statement in an assignment of error must contain a brief statement of so much of the record as supports and explains the proposition.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

4. APPEAL AND ERROR (§ 732*)—ASSIGNMENTS OF ERROR—SUFFICIENCY.

An assignment that "the court erred in overruling the defendant's motion for a new trial for the reasons assigned in said motion" is too general to be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3022–3024; Dec. Dig. § 732.*]

5. APPEAL AND ERROR (§ 1074*) — ASSIGNMENTS OF ERROR—DISPOSITION OF CASE.

Whether the trial court erred in requiring a deposit of $200 as security for costs as a condition precedent to an appeal from an adverse judgment has nothing to do with the disposition of the appeal, and, not having prevented the appeal, will not be reviewed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4248–4252; Dec. Dig. § 1074.*]

Appeal from District Court, Galveston County; Clay S. Briggs, Judge.

Action by Adoue & Lobit against Ella Smith and others. Judgment for plaintiffs, and defendants appeal. Affirmed.

John S. Gregory, of Galveston, for appellants. Stewarts, of Galveston, for appellees.

McMEANS, J. Appellees Adoue & Lobit, plaintiffs in the court below, brought this suit on June 30, 1910, against Ella Smith, and Libby and Pearl Smith, children of Ella Smith and W. M. Smith, to recover the title and possession of blocks numbered 55, 58, 75, and 78 of Flake's subdivision of a part of the W. H. Jack league in Galveston county near the town of Hitchcock, and known as the Bautsch place. The defendants Libby and Pearl Smith disclaimed, and defendant Ella Smith, who at the time the suit was filed was a feme sole, pleaded not guilty and the statute of limitations of 10 years. A trial before a jury resulted in a verdict and judgment for plaintiffs, from which judgment the defendant, after her motion for a new trial had been overruled, has appealed.

E. J. Biering is the common source of title. On April 25, 1899, E. J. Biering, to secure to Adoue & Lobit the payment of a loan of $1,000 then made, executed to J. A. La Barthe, as trustee, a deed of trust upon the land in controversy. December 3, 1900, Biering was adjudged a bankrupt, and J. R. Cheek was appointed and qualified as trustee. Cheek as trustee sold the land to Adoue & Lobit in satisfaction of their mortgage debt, and on April 27, 1903, this sale was confirmed by the United States District Court in which the bankruptcy proceedings were pending, and pursuant to the directions of said court, Cheek, trustee, on May 27, 1903, executed his deed conveying the land in controversy to Adoue & Lobit.

Ella Smith deraigns title as follows: (1) Deed dated August 1, 1910, from E. J. Biering to Chas. Hughes, conveying the land in controversy. This deed contains the following recital: "Whereas, the above-described tract of land was by me sold and conveyed

---

and possession delivered to Chas. Hughes, by deed dated and executed by me on or about the first day of February, 1898, and said deed having been lost and never placed upon record, which has created a missing link in the record title of said land, I have received full and satisfactory payment therefor, this deed is executed to take the place of and supply the deed so lost and unrecorded." This deed does not appear by the record in this case to have been filed or recorded in the county clerk's office of Galveston county. (2) The following receipt: "Hitchcock, Texas, April 9, 1901. Rec'd from Mrs. Ella Smith ($500.00) five hundred dollars for payment in full for blocks numbered fifty-five (55), fifty-eight (58), seventy-five (75), seventy-eight (78), in A. Flake's subdivision of a part of the M. H. Jack league, said subdivision being known as Flake's addition to Hitchcock, being ten (10) acres of land more or less and the improvements thereon situated. [Signed] Charlie Hughes." It does not appear that Charles Hughes ever executed a deed to Ella Smith conveying the title of the land to her, and so far as the record shows such title as the said Hughes had is still in him.

On the issue of 10 years' limitations, the defendant Ella Smith testified that, more than 10 years before the filing of the suit and prior to the purchase of the land by her from Hughes, her husband abandoned her, and that they never lived together again; that two or three years before the storm of September 8, 1900, she moved on the land in question and lived there until the storm blew her house to pieces; that the year following the storm she allowed a Mr. Seidler to live upon and cultivate the land; that she then returned to and has lived upon the land ever since; and that her possession and occupancy were under a claim of right. This testimony was sharply controverted by witnesses introduced by plaintiffs, by whose testimony it was shown that one Torrey, a relative of Ella Smith, rented the land from Biering some two or three years before the storm, and that Ella Smith lived with him, keeping a part of her furniture and her sewing machine in the house on the land rented by Torrey, and the balance in a house across the railroad; that Torrey continued to live on and cultivate the land as tenant of Biering until the storm; that Seidler and his wife then lived on the place as tenants of Biering from the time of the storm in 1900 until the year 1903; that they cultivated the land in 1904; and that it was after this that Ella Smith moved on the land and claimed the same by virtue of her purchase from Hughes. Plaintiffs proved, in this connection, that on June 1, 1909, W. M. Smith, the husband of Ella Smith, leased the land in controversy from Adoue & Lobit. To offset the effect of this evidence, defendant undertook to prove that on that date Ella and W. M. Smith were not living together as husband and wife, and that W. M. Smith had abandoned her more than 10 years before obtaining the lease, and that they never lived together after their first separation. This was testified to by several witnesses. On the other hand, it was shown by the testimony of several witnesses that Ella Smith and her husband had not separated, but continued to live together, and that upon the date of the lease they were still living together as husband and wife, and so continued until W. M. Smith died.

[1, 2] In view of the foregoing facts, we think the court did not err in permitting the lease from Adoue & Lobit to W. M. Smith to go before the jury. What the objection was, and whether appellant took a bill of exceptions to the action of the court in admitting the lease, are not shown by her brief. If Ella Smith and her husband were living together during the years in which the evidence shows she lived upon the land, and the jury had a right to say from the evidence that they did so live together, then the lease of the land by the husband from those holding the legal title would be evidence that Ella Smith was not holding adversely to the true owners. The assignment is overruled. For a like reason, we think it was not error for the court to charge the jury as follows: "You are further instructed, however, that if you believe from the evidence that William Smith had not abandoned defendant Ella Smith, his wife, during such period of 10 years' possession, if any, and that during said 10 years' possession, if any, said William Smith executed to plaintiffs the lease in evidence of the property in controversy, then you will find against the defendant Ella Smith, and in favor of plaintiffs on the issue of limitation." The second assignment raising the point is overruled.

[3] Appellant's third assignment is as follows: "The court erred in sustaining the demurrer to suggestions of improvements." The proposition subjoined is: "Defendant's amended suggestion of improvements was pleaded in accordance with the statutes of Texas, and defendant was entitled to their value." Following the proposition, we have this statement: "Defendant's first amended suggestion of improvements was in accordance with the statutes of Texas, art. 4813, which ias the present law of Texas." This assignment is not presented in accordance with rule 31 (142 S. W. xiii) and cannot be considered. For a like reason we cannot consider appellant's sixth assignment of error.

[4] The eighth assignment is: "The court erred in overruling the defendant's motion for a new trial for the reasons assigned in said motion." That this assignment is too general to authorize consideration of it is too well settled to require citation of authority.

[5] The ninth assignment, admitting that

it is well taken, presents a matter which can in no event have any controlling force in the disposition of this appeal. Whether the action of the trial court in requiring appellant to deposit $200 with the clerk of the trial court or to give security for costs on appeal, as a condition precedent to the appeal, was correct or not, is a matter we are not called upon to decide. The appeal is here; and the action of the court complained of did not prevent the appeal. There is no merit in the assignment.

We find no reversible error in the record, and the judgment of the court below is affirmed.

Affirmed.