**R. W. WIER LUMBER CO. v. EAVES et al.**
**(No. 1442.)***

(Court of Civil Appeals of Texas. Beaumont.
Jan. 31, 1927. Rehearing Denied
Feb. 11, 1927.)

1. **Adverse possession** ⟜103—**Tract covering parts of two surveys purchased by metes and bounds, held adversely possessed in solido, and doctrine of encroachment inapplicable.**

Where original settler, who claimed entire 160-acre tract, sold tract by metes and bounds, *held* that purchasers who entered possession and recorded deed had possession of entire tract, notwithstanding dwelling house and large part of tract was in one survey, and balance and small amount of improvements was in another survey; doctrine of encroachments not being applicable.

2. **Adverse possession** ⟜47—**Record owner's removal of timber, under contract with possessor, did not interrupt running of limitation, notwithstanding his failure to pay for timber.**

That record owner, under contract with adverse possessor for purchase of timber, cut and removed timber did not interrupt running of limitation in favor of adverse possessor, notwithstanding purchaser, shortly after making contracts, sued for land and did not pay for timber, where suit was dismissed.

3. **Adverse possession** ⟜57—**Admission of adverse possessor's explanation that letter to record owner respecting purchase related to portion of tract, not claimed by him, held not error.**

Where plaintiff record owner knew that defendants claimed only part of section by adverse possession, admission in evidence of defendant's testimony that letter in which he expressed desire to purchase such section merely referred to balance of section, not claimed by him, to show that letter did not constitute admission of ownership in plaintiff, *held* not error.

4. **Appeal and error** ⟜1050(I)—**Adverse possessor's explanation of letter relating to purchase from record owner held harmless, where title had previously vested by limitation.**

Admission in evidence of explanation of adverse possessor, claiming only part of section, that his letter to record owner expressing desire to purchase section related only to balance of section, if error, *held* harmless, where title had vested in adverse possessor under 10-year limitation statute before letter was written.

5. **Adverse possession** ⟜115(4)—**Whether adverse possessor's letter expressing desire to purchase, was admission of title in record owner or attempt to buy peace held fact question.**

Whether letter, in which adverse possessor, claiming only part of section, expressed desire to purchase section and requested prices, was an admission of title to entire tract in record owner, or attempt to buy his peace, *held* questions of fact.

6. **Appeal and error** ⟜930(3)—**On appeal, fact issues not submitted to jury must be deemed to have been found in appellee's favor.**

On appeal, issues of fact not submitted to jury, nor requested to be so submitted by appellant, must be deemed to have been found in favor of appellees to support judgment.

7. **Appeal and error** ⟜1170(7)—**Any error in admitting alleged self-serving recitals in deed held cured by charge to disregard, and, in any event, harmless (Court of Civil Appeals rule 62a).**

In trespass to try title, any error in admitting in evidence recitals in deed to defendants' predecessor that deed should have been made on earlier date specified, and that property had been in grantor's adverse possession for about 12 months prior thereto, over objections that recitals were self-serving, hearsay, without opportunity to cross-examine, and involved legal conclusions *held* cured by special charge to disregard recitals, and, in any event, were harmless under Court of Civil Appeals rule 62a.

8. **Adverse possession** ⟜114(I)—**Finding that defendant had title by 10 years' adverse possession held warranted.**

In trespass to try title, evidence *held* to warrant finding that defendant had acquired title by 10 years' adverse possession.

Appeal from District Court, Jasper County; V. H. Stark, Judge.

Trespass to try title by the R. W. Wier Lumber Company against Irvan Eaves and others. Judgment for defendants, and plaintiff appeals. Affirmed.

Andrews, Streetman, Logue & Mobley, of Houston, and G. E. Richardson, of Jasper, for appellant.

Smith & Lanier, of Jasper, for appellees.

O'QUINN, J. Suit in trespass to try title, brought by appellant against appellees, for the William R. Denmore 640-acre survey, in Jasper county. Appellees disclaimed as to all of the survey except about 100 acres, which they claimed under the five and ten years' statutes of limitation. The 100 acres constituted a part of a 160-acre tract claimed by appellees, and which lay on the Denmore and Hentz surveys in the proportion of about 100 acres on the Denmore and 60 acres on the Hentz.

The case was tried to a jury upon the sole issue of ten years' limitation, which the jury found in favor of appellees, and upon which finding judgment was rendered in their favor. Motion for a new trial was overruled. The case is before us on appeal.

The Denmore and Hentz were adjoining surveys of 640 acres each, and known as sections 10 and 11 of the Toby Scrip surveys. The 160 acres claimed by appellees lay partly

on each of these surveys. The following plat shows the situation of these surveys and the 160 acres claimed by appellees:

The record title to the Denmore was shown to be in appellant. The claim of appellees originated about 1897, when Joshua Hayes settled on the 160 acres. The record does not disclose just when Hayes first began claiming the identical 160 acres, but he sold his claim to Joseph Eaves some time about 1898, and executed to him a deed conveying same by metes and bounds February 9, 1909, which was placed of record February 18, 1909. This was some eleven years after he sold to Eaves. Eaves took possession of the land at the time he bought same from Hayes, and on March 16, 1908, sold same to his son, I. Eaves, appellee, by deed describing the 160 acres by metes and bounds, which deed was recorded February 18, 1909. The description in the two mentioned deeds was identical. The record shows that, when Hayes took possession of the 160 acres, he made improvements, his dwelling house being on the Hentz. After residing on the land for about a year, he sold to Joseph Eaves, who took possession and remained on same until he sold to his son, I. Eaves, appellee, March 16, 1908, who then took possession and lived on same until the trial of the case, December, 1924. The lines and corners of the 160 acres are well marked on the ground, but there is no evidence as to when the land was surveyed. It appears with certainty to have been as early as March 16, 1908, the date of the deed from Joseph Eaves to his son, I. Eaves, appellee.

The jury having found that appellees have had peaceful and adverse possession of the land (the 100 acres) claimed by them, cultivating, using, and enjoying same for ten consecutive years prior to the filing of this suit, July 21, 1924, the judgment should be affirmed, unless the limitation of appellees is defeated by some one of the following contentions of appellant.

[1] 1. Appellant contends that, because the dwelling house in which appellee Eaves and those under whom he claims was situated on the Hentz survey, and that only a small amount of the improvements in the form of cultivated land and pasture was on the Denmore, the location of the dwelling house on the Hentz was the controlling factor, and the possession of land on the Denmore, the adjoining tract, was incidental and not adverse beyond the actual limits of the inclosures.

This contention is overruled. We think it plainly appears that, when Hayes settled on the land, he did so without any reference to the dividing line between the surveys, and that it was not his intention to claim 160 acres wholly on either the Hentz or Denmore, but when the 160 acres were surveyed and deed made from Hayes to Joseph Eaves, and from Joseph Eaves to his son, I. Eaves, appellee, the location of the land—the 160 acres—was made in one independent tract, and that all the claim to same has been solely with reference to the 160 acres, as a whole, by metes and bounds. The doctrine of encroachments, upon which appellant's contention is based, has no application. This is not a case where a party owns land and is in possession of same, and by mistake or intentionally, extends his improvements on his own land across and onto an adjoining tract, and by reason of such extension claims by limitation 160 acres. Here the original claim was one entire 160 acres, without ownership of any adjoining lands, and no possession of any, save the tract claimed by limitation. It was sold by metes and bounds, and the purchasers took possession of the 160 acres by virtue of the deeds, which were placed of record, claiming under the deeds, and using and enjoying the land by virtue of the right so conferred. The fact that the 160 acres, originally taken possession of and held and sold, happened to straddle the dividing line between the two surveys does not prevent the claimant of the 160 acres from asserting adverse possession and claim to any portion of the 160 acres, but the limitation is controlled by the same rule of law as if the original claim had been made to a 160-acre tract, situated wholly upon either of the sections, 10 or 11. The claim to the 160 acres was in solido, in one tract, not in two parts situated on two tracts.

[2] 2. Appellant insists that in 1909 and 1910 it entered upon the premises in question and cut and removed timber therefrom, and that this entry interrupted and broke appellees' limitation. This contention cannot be sustained. The undisputed evidence shows that appellee I. Eaves sold the timber to appellant by a contract made with R. W. Wier, president of and acting for appellant, for $1.50 per thousand feet, and that at the time

the contract of sale was made Eaves pointed out to appellant the lines and corners of the 160 acres, and that in pursuance of that contract the timber was cut. It is true that the record further discloses that shortly after making the contract for the purchase of the timber, appellant sued Eaves for the land and did not pay for the timber. Still, the suit was never tried, but was dismissed, and, as above stated, the undisputed evidence shows that before entering upon the land and cutting the timber, appellant made a contract for the purchase of the timber on the land, and, under that contract, cut the timber. So, this entry being with the consent and under a contract with appellee, it in no way interrupted the running of limitation in favor of appellee. R. W. Wier did not testify, and there is no explanation in the record why he failed to so do. The testimony of Eaves as to the contract of sale of the timber and its subsequent cutting is, in no way, disputed.

[3, 4] 3. Appellant says that in 1918 appellees admitted the title to the land in controversy to be in appellant, which admission destroyed the adverse character of appellees' possession. This contention is based upon a letter written by appellee I. Eaves to R. W. Wier, which is:

"June 12, 1918.
"Mr. R. W. Wier, Houston, Tex.—Dear Sir: Will write in regards of purchasing some land. I would like to buy section No. 10, the W. M. Denmore survey and section No. 4. Will you please write me. The prices of both section of land.
"Yours truly, Irvan Eaves, Texla, Tex."

Eaves was permitted to testify, in explanation of the letter, that he was not claiming all of section 10, but that he wanted to buy all of said section "outside of my survey—the balance of the 640 acres." This testimony of Eaves was objected to by appellant, and the objection overruled. The admission of this evidence is assigned as error. We think the testimony was admissible. Long before the letter was written, appellant knew that Eaves was claiming that portion of the Denmore 640-acre tract—the 100 acres. Eaves had contracted the timber on it to R. W. Wier, and had shown R. W. Wier the lines and corners of the 160 acres. This was positive and actual notice and knowledge of appellees' claim. Also appellee's deed to the land had been on record since February 18, 1909, all of which time appellee was in possession, claiming and using the land. That being so, we think it was proper to allow Eaves to testify what he meant in writing about buying section 10—the Denmore. But if this could be held error, it was harmless, for the title of appellees by the ten years' limitation had already become perfect before the writing of the letter. The record shows that about 1898, Joseph Eaves bought the 160 acres from Hayes, and then sold it to his son, I. Eaves, by deed dated March 16, 1908, describing it by metes and bounds, and that appellee I. Eaves, at said time, March 16, 1908, went into possession of the land, and had been in possession ever since. The letter was written June 12, 1918. So, the ten years had expired before the writing of the letter, and the title had already vested in appellees.

[5, 6] Moreover, in view of all the facts and circumstances, we think it a question of fact as to what appellee meant by the letter to Wier, and as to whether it was an admission of title in appellant to the 100 acres in controversy, or an attempt to buy his peace as to same, and, as the court did not submit any such issues or questions to the jury, and appellant did not request that same be submitted, it must be held that the court found said issues in favor of appellees in support of the judgment.

[7] When appellee introduced his deed from Hayes to Joseph Eaves, his grantor, appellant objected to certain recitations of fact contained in the deed, to wit:

"This deed should have been made in January, 1898, that being the time I sold the above land to the said Joe Eaves and I then and for about 12 months prior thereto, being in actual possession of said land, using, occupying, cultivating and enjoying said land as my home, claiming the same as my own adverse to all other parties and at said date of sale I delivered the actual possession of same, together with the improvements thereon to the said Joe Eaves, who moved upon the same and took actual possession of said land."

The objection to said recitals went to same as a whole, and to each of its several parts, on the grounds that said recitals were self-serving, hearsay, and without opportunity to cross-examine the person making said statements, and involved a legal conclusion of the grantor in the deed, which objections were overruled, and to which ruling appellant duly preserved its bill of exception, and the action of the court is assigned as error.

We think the assignment should be overruled. If the admission of the recital was error, which we doubt, but do not decide, it was cured by a special charge requested by appellant and given by the court, instructing the jury not to consider the recitals in the deed. In any event, in view of all the facts and circumstances in evidence, we think the error, if it was such, was, under rule 62a, harmless.

[8] Appellant attacks the verdict of the jury as not supported by the evidence and contrary to the undisputed evidence. The assignment is overruled. The record amply supports the verdict.

No reversible error having been shown, the judgment should be affirmed, and it is so ordered. Affirmed.

**On Motion for Rehearing and Additional Findings of Fact**

Appellant filed a motion for rehearing, which has been overruled. Appellant also filed motion for additional findings of fact, which motion has been granted, and in response to said motion we find:

1. That the inclosure marked on the plat in original opinion as C-D-E-F-G was made by Eaves in 1921. It was no part of the improvements at the time he bought and took possession of the land in 1908.

2. The house marked "new house," situated within the inclosure C-D-E-F-G, was placed there in 1921. It was before that situated on the Hentz tract, and was by Eaves moved over onto the Denmore in 1921.

3. When Eaves bought and took possession of the 160 acres, the fenced improvements on the Denmore were embraced within the space marked H-I-J-C-G-K, the remaining portions of the improvements shown on the plat being on the Hentz. The dwelling house at the time Eaves bought and took possession, 1908, was on the Hentz, and the inclosures as shown substantially existed until 1921, when the other improvements, shown as C-D-E-F-G, with the new house thereon were made by Eaves.