What we have said makes it unnecessary to answer the fourth question.

[19, 20] It is true generally that upon appeal to the Court of Civil Appeals the jurisdiction of the trial court must affirmatively appear from the record. When the proceeding originates in the trial court, it must appear from the pleadings, which are required to be contained in the transcript. Where it originates in the justice court, it must appear as an appeal; when in the absence of a showing to the contrary in the record, it will be presumed the justice court had jurisdiction. With this presumption obtaining, the county court is shown to have jurisdiction, at least prima facie. It is like a pleading showing jurisdiction; it is good until attacked. Until the vice appears jurisdiction attaches. Thus the jurisdiction of the county court affirmatively appears. To hold otherwise would be to require the transcript to that court to contain matter not contemplated by the practice statutes applicable.

We therefore recommended that the questions certified be answered as herein shown.

GREENWOOD and PIERSON, JJ. Opinion of the Commission of Appeals answering certified questions adopted and ordered certified to the Court of Civil Appeals.

---

## HOUSTON OIL CO. OF TEXAS v. HOWARD.
### (No. 779—4086.)

Commission of Appeals of Texas, Section ·A.
May 18, 1927.

1. **Adverse possession** ⬅117—**Jury's finding that fence was erected "1904 to 1906" held reconcilable with finding that statute of limitations, under which fence must have been erected prior to November 13, 1906, had run.**

Findings of jury, in suit in trespass to try title, that 5-year limitation statute had run and fence had been erected "1904 to 1906" *held* reconcilable, supporting judgment; verdict being construed as finding that fence was erected prior to November 13, 1906, date at which 5-year period must have commenced.

2. **Adverse possession** ⬅93, 94—**To recover under statute of 5-year limitation, taxes for 5 consecutive years must have been paid before delinquent.**

In order to recover by prescription under statute of 5-year limitation, payment of taxes must be made each year for 5 consecutive years, and every payment must be made before taxes become delinquent.

3. **Taxation** ⬅526—**Taxes paid during January next succeeding year, for which they are assessed, are not delinquent (Rev. St. 1911, arts. 7616, 7624, 7633, 7692).**

Taxes paid before January 31 of next succeeding year, for which they were assessed, *held* not delinquent, under Rev. St. 1911, art. 7692, providing for enforced collection and penalty for nonpayment only after January 31, though articles 7616, 7624, 7633, previously in effect, provide for enforced collection after January 1.

4. **Taxation** ⬅545—**Statute providing for enforced collection of taxes after January 31st of year following assessment held repeal of provisions permitting enforced collection earlier (Rev. St. 1911, arts. 7616, 7624, 7633, 7692).**

Rev. St. 1911, art. 7692, providing for enforced collection of taxes and penalty on failure to make payment before January 31st next succeeding year of assessment, *held* inoperative provisions of prior statutes, articles 7616, 7624, 7633, in so far as they permit enforcement of tax collections during month of January following assessment year.

5. **Appeal and error** ⬅1082(1)—**Whether appellate court's reversal was proper was not presented where only error claimed by appellant was refusal to render judgment and appellee claims no error.**

Where, on appeal from decision of Court of Civil Appeals, only question raised by appellant

was error in failing to render judgment on reversal and appellee makes no complaint of reversal, question of whether reversal was error was not presented for review.

Error to Court of Civil Appeals of Ninth Supreme Judicial District.

Suit by the Houston Oil Company of Texas against N. B. Howard. Judgment for defendant was reversed and remanded by the Court of Civil Appeals (256 S. W. 340), and plaintiff brings error, claiming the judgment should have been reversed and rendered. Judgment of Court of Civil Appeals remanding case for new trial affirmed.

H. O. Head, of Sherman, and Kennerly, Williams, Lee & Hill, P. O. Settle and W. H. Blades, all of Houston, for plaintiff in error.

Ramsey, Minton & Lewis, all of San Augustine, and Minton & Lewis, of Hemphill, for defendant in error.

HARVEY, P. J. This is a suit in trespass to try title brought by plaintiff in error, the Houston Oil Company of Texas, against N. B. Howard, the defendant in error, on November 13, 1911. The latter, among other defenses, pleaded the statute of 5-year limitation. The trial was had on special issues, and upon the verdict of the jury on such special issues the trial court rendered judgment for the defendant in error. The verdict of the jury on all issues submitted was favorable to the plaintiff in error except those relating to Howard's plea of 5-year limitation. The sufficiency of the jury's verdict upon the last-mentioned issues, to sustain the judgment that was rendered, is assailed by the plaintiff in error; the contention being that the effect of the jury's verdict on such issues is such as to defeat Howard's plea of 5-year limitation, and therefore the judgment should have been in favor of plaintiff in error.

The special findings of the jury relative to the issue of 5-year limitation, so far as necessary to notice here, are as follows:

The jury, in answer to one special issue, found that Howard had held peaceable and adverse possession of the land in controversy, cultivating, using, or enjoying the same, and paying all taxes thereon, as they accrued, and claiming under a deed or deeds duly registered for a period of 5 consecutive years before the commencement of this suit.

It appeared from the findings of the jury upon other special issues that limitation did not begin to run in favor of Howard until the time he inclosed said tract of land by erecting a fence along Ayish bayou. In answer to a special issue as to when said fence was erected, the jury answered as follows: "1904 to 1906."

[1] The plaintiff in error contends, in effect, that because the last-mentioned special finding does not fix the date of the erec-

294 S.W.—54

tion of the fence prior to November 13, 1906, 5 years prior to the commencement of this suit, but leaves it uncertain whether the fence was erected during the year 1906 after November 13th of that year, the verdict of the jury does not sustain the judgment. And the contention is made that because the verdict does not sustain Howard's plea of 5-year limitation, judgment should have been rendered for the plaintiff in error.

We think the verdict should be construed as a finding that the said fence, which put in motion the statute of limitation, was erected prior to November 13, 1906. As we have said, the jury found, in answer to the first-mentioned special issue, that Howard had held adverse possession of the land for 5 years before the commencement of the suit. Their answer to the other question, to the effect that the fence which originated such possession was built during "1904 to 1906," is plainly reconcilable with the first-mentioned finding. The effect of the verdict of the jury on these special issues is to sustain the judgment in favor of Howard on his plea of 5-year limitation, unless same is defeated because of the time of tax payments which we shall hereafter discuss. It must be borne in mind that we are now passing upon the sufficiency of the verdict to sustain the judgment, and not upon the sufficiency of the evidence to sustain the plea of 5-year limitation.

[2] Another question duly raised herein by the plaintiff in error has reference to the time of payment of taxes by Howard during said 5-year period. It is an established fact that Howard paid the taxes on the land in controversy each year for 5 consecutive years before the commencement of the suit. However, some of such successive tax payments were not made by him until some time during the month of January next following the year for which such taxes were assessed.

The plaintiff in error insists that these taxes which were paid during the month of January had become delinquent before such payments were made, and because of such fact the defendant in error's plea of 5-year limitation failed. The Supreme Court, in the case of Baker v. Fogle, 110 Tex. 301, 217 S. W. 141, 219 S. W. 450, has held that in order to prescribe under the statute of 5-year limitation, payment of taxes must be made each year for 5 consecutive years and that each of such payments must be made before such taxes become delinquent.

[3] The question, therefore, that is presented here for determination is, Do taxes which are assessed for a given year become delinquent prior to the 1st day of February next succeeding the year for which they were assessed? The solution of this question requires a notice of various articles of the Revised Statutes of 1911.

Article 7616 makes it the duty of every

person to pay his property taxes "before the last day of December, of the same year for which the assessment is made."

Article 7624 provides, in part, that:

"If any person shall fail or refuse to pay the taxes imposed upon him or his property by law, until the first day of January next succeeding the return of the assessment roll of the county to the comptroller, the collector of taxes shall, by virtue of his tax roll, seize and levy upon and sell so much personal property belonging to such person as may be sufficient to pay his taxes, together with all costs accruing thereon. * * *"

Article 7633 and succeeding articles provide for seizure and sale at public auction by the tax collector of real estate of the delinquent in case the delinquent is not possessed of personal property in the county to satisfy the taxes due by him.

All the articles above referred to were existing law in 1897, when the "delinquent tax law," embodied in chapter 15, was passed.

Article 7692, of the last-mentioned chapter, reads in part, as follows:

"If any person shall fail or refuse to pay the taxes imposed upon him or his property by law until the thirty-first day of January next succeeding the return of the assessment rolls of the county to the comptroller, a penalty of ten per cent. on the entire amount of such taxes shall accrue; * * * and the collector of taxes shall, by virtue of his tax rolls, seize and levy upon and sell so much personal property belonging to such person as may be sufficient to pay his taxes, together with the penalty above provided, interest and all costs accruing thereon. * * *"

The last-mentioned article further provides, in substance, that if no personal property be found for seizure and sale, the collector on the 31st of March of each year shall make a list of the lands and lots on which the taxes for the preceding year are delinquent, charging against same all taxes and penalties assessed against the owner thereof. The article further provides for the examination and approval of the list by the commissioners' court, and for the advertisement thereof, and for suit in the district court against the delinquents shown in such list. Other articles of said "delinquent tax" chapter make provision as to the procedure in such suits, and for foreclosure of the tax lien, and for the sale of the property by the sheriff under the foreclosure.

[4] It will be observed that the provisions of the pre-existing statutes to which we have referred, which authorize the seizure and sale of property by the tax collector by virtue of his tax rolls prior to the 1st day of February, are, to that extent, in conflict with provisions of the later statutes embraced in the "delinquent tax law" chapter. The inevitable result of the enactment of the "delinquent tax law" was to postpone, from January 1st to February 1st, the date upon which enforced collection of taxes was to begin, and to fix a penalty for nonpayment before the last-named date. The machinery which had been devised by such pre-existing statutes for the enforcement of tax collections was thereby rendered inoperative during the month of January next following the year for which such taxes are assessed. When this was done, the existence of the statutory requirement, to the effect that taxes should be paid before December 31st, ceased to be supported by the reasons which obviously brought the requirement into existence. The part of article 7616, which we have quoted, could serve no useful purpose in the newly created system.

The Supreme Court, in the case of Baker v. Fogle, supra, was not called upon to determine, specifically, the date when taxes become delinquent, and therefore no definite pronouncement on the point was made. But language used in the opinion of the court is strongly suggestive of the fact that the court considered that a taxpayer does not become delinquent until February 1st.

The case of Club Land & Cattle Co. v. Wall, 99 Tex. 591, 91 S. W. 778, 122 Am. St. Rep. 666, also is persuasive. Although the particular point was not noticed in the court's opinion, the correctness of the conclusion reached in that case necessarily depended on the fact that current taxes do not become delinquent on December 31st. An examination by us of the agreed statement of facts contained in the original transcript of that case, to which we have had access, discloses the undisputed fact that the taxes for the year 1903 (the fifth year of the limitation period) were paid, as follows: On the half interest of Dycus in the land, the taxes were paid during January, 1904; and on the other half they were paid in October, 1904. The Supreme Court sustained the plea of 5-year limitation as to the Dycus half interest, which would have been incorrect if the 1903 taxes on such half interest became delinquent on December 31, 1903.

Throughout the delinquent tax law of 1897, and amendments thereto, runs the plain inference that the period of indulgence in tax payments was thereby extended to February 1st. A careful consideration of the various statutes relating to the subject leads us to the conclusion that taxes do not become delinquent unless they remain unpaid at the expiration of the 31st day of January next succeeding the year for which they are assessed.

It follows from this conclusion that the said payments of taxes by Howard during the month of January were made in due time, within the meaning of the statute of 5-year limitation.

[5] The Court of Civil Appeals reversed the judgment of the trial court and remanded the cause for another trial (256 S. W. 340).

The defendant in error has made no complaint in this court of such action of the Court of Civil Appeals. The writ of error herein was granted on the application of the plaintiff in error wherein the latter affirms the correctness of the said judgment of reversal, but complains of the failure of the Court of Civil Appeals to render judgment for the plaintiff in error instead of remanding the cause. It will thus be seen that the question as to the correctness of the judgment of the Court of Civil Appeals, so far as the reversal of the judgment of the trial court is concerned, is not before us for determination. And, for the reasons which we have stated, we have reached the conclusion that having reversed the judgment of the trial court as it did, of which action no complaint is made here, the Court of Civil Appeals did not commit error in refusing to render judgment for the plaintiff in error.

We therefore recommend that the judgment of the Court of Civil Appeals, remanding the case for another trial, be affirmed.

GREENWOOD and PIERSON, JJ. Judgment of the Court of Civil Appeals affirmed, as recommended by the Commission of Appeals.