CUNIFF et ux. v. BERNARD CORPORA-
TION.

No. 2783.

Court of Civil Appeals of Texas. Beaumont.

May 1, 1936.

Rehearing Denied May 27, 1936.

Oliver J. Todd and W. D. Gordon, both of Beaumont, for plaintiffs in error.

Lawler, Wood & Childress, of Houston, for defendant in error.

COMBS, Justice.

Plaintiff in error O. T. Cuniff and wife, Lizzie Cuniff, brought this suit in district court of Hardin county, Tex., in the form of an action in trespass to try title to recover blocks 1, 2, and 3 and the northwest one-fourth of block No. 6 of the R. S. Sterling subdivision of H. T. & B. Railroad Company survey No. 69. The only title asserted by the plaintiffs was the 10-year statute of limitations, which they specifically pleaded. The plaintiffs' possession was continuous for more than 10 years, exclusive of 7 or 8 months that plaintiffs were out of the state, and the appropriation and use of the land by the plaintiffs were sufficient to mature limitation title in them unless the adverse character of their possession was destroyed by recognition of the defendant's title during the claimed limitation period.

The appellant O. T. Cuniff contends that his alleged admissions of title related to lands lying outside of his inclosure and not involved in this suit and also that the admissions, if made, were made to R. S. Sterling at a time when he was not the owner. In September of 1913 R. S. Sterling, the then record owner, subdivided about three-fourths of H. T. & B. section 69 into thirteen tracts, or blocks, and filed a plat thereof as the R. S. Sterling subdivision of the H. T. & B. Railroad Company survey No. 69. In December of that year he transferred the property to the R. S. Sterling Investment Company, which company thereafter sold several tracts, retaining title to the balance, including the land in controversy, until 1927, when it was transferred to the Sterling Properties, a corporation. In February of 1933 the Sour Lake State Bank acquired the property at trustee's sale, and in November, 1933, conveyed it to the appellee, the Bernard Corporation. In 1919 the R. S. Sterling Investment Company conveyed about 72 acres of the land out of the subdivision to plaintiff O. T. Cuniff, who went into possession. During the summer of 1922 Cuniff fenced two pastures for his stock, referred to as the big and the little pasture, and included in them some of his own land, some land that he had leased from others, and also included within the fences the tracts of land involved in this suit. The

claimed limitation period began at that time, and the possession continued until shortly before the filing of this suit in 1934. The defendant offered a mass of evidence from various witnesses tending to show that the plaintiff O. T. Cuniff had repeatedly, during the claimed limitation period, negotiated with R. S. Sterling concerning pasture leases on the land in controversy, and that he had repeatedly stated to Mr. Sterling and to a number of the witnesses that the lands in question belonged to Sterling. Also a number of letters exchanged between R. S. Sterling and O. T. Cuniff, tending to show recognition of title, were introduced in evidence. Mr. Cuniff admitted some of the negotiations with Mr. Sterling, but he said that the negotiations and statements as to title related to lands which lay outside of his inclosures and were not intended at any time to be a recognition of Mr. Sterling's title to the lands which were inclosed in his pastures and which are sued for in this case. With respect to each of the three tracts involved in this suit, the trial court submitted a general issue of 10-year limitation and the jury, in each instance, answered the same in favor of the plaintiffs. With respect to the recognition of title, the trial judge submitted to the jury the following issue in connection with each of the general issues, and in each instance the jury answered "yes": "Do you find from a preponderance of the evidence that O. T. Cuniff at any time within the said period of ten years therein found by you admitted, acknowledged or recognized by his words, acts or deeds that R. S. Sterling, R. S. Sterling Investment Company or Sour Lake State Bank was the owner of the land referred to therein?"

There was also evidence that the plaintiff Cuniff requested an oil and gas lease on the land in controversy in 1925. Under the evidence there was an issue of fact as to whether Cuniff made the request for the lease, and, if so, whether it related to the land in controversy, and in connection with that matter the court submitted the following issue: "Do you find from the preponderance of the evidence that defendant O. T. Cuniff in 1925 requested an oil and gas lease on the land in controversy"; to which the jury answered "yes".

The defendant also introduced in evidence a letter, reading as follows:

"Sour Lake, Texas,
"Sept, 15–25.
"Mr. R. S. Sterling, Houston, Texas.

"Dear Mr. Sterling: I am sending you today a mape of your land in Section 69, The location that Mr. Carpenter and I like best is the north line of block 6 and of course others interested would want the location on land that we are getting at one eaight royalty now I wonder if you will be a good fellow and give us Block 6 which contains 30 acres at an eaight royalty and the balance you let us have at a 6 royalty you may hold 10 acres out of Block 6 and give us the northwest 20. But if you should not feel like doing this send us your lease as agreed and we will fight out the location between ourselves. I remain,

"Respectfully yours,

"O. T. Cuniff."

The evidence showed that the letter was written by Mrs. Cuniff. She testified that she wrote the letter and signed her husband's name to it; that she usually wrote his letters, but that he gave her no particular instruction about what to put in this particular letter; that this letter was written at the instance of two other parties who were endeavoring to block up an oil lease and who enlisted Mr. Cuniff's efforts to obtain the lease because he knew Mr. Sterling. With respect to the letter the court submitted to the jury the following issue: "Do you find from a preponderance of the evidence that O. T. Cuniff authorized and directed his wife, Lizzie Cuniff, to write to R. S. Sterling the letter dated September 15, 1925, which was introduced in evidence as Exhibit No. 25"; to which the jury answered "Yes."

The plaintiffs objected to the submission of the special issues relating to recognition on the ground they were not raised by the pleadings, and also that they were not raised by the evidence. They later moved for a verdict non obstante veredicto on the same grounds. However, the trial court overruled the objections and the motion for verdict, and entered a judgment in favor of the defendant that the plaintiffs take nothing.

Appellants contend, first, that the issues relating to the recognition of appellee's title were not raised by the pleadings. As we understand appellants' contention, it is that recognition of title by a limitation claimant is a special defense, which must be specifically pleaded to be available. Such, we think, is not the rule. It was an essential element of the plaintiffs' plea of title by limitation that the possession relied upon by them be adverse. In pleading title by adverse possession under the limitation statute, they necessarily averred as an element of such plea that they had not, during the limitation period, recognized the title of the defendant. Vernon's Ann.Civ.St. art. 5515; Smith v. Robertson (Tex.Com. App.) 235 S.W. 847; Houston Oil Co. v. Jones, 109 Tex. 89, 198 S.W. 290. We think it is now unquestionably the general rule that the general denial allows the introduction by the defendant of any evidence, not otherwise inadmissible, which has the effect of directly rebutting the plaintiff's allegations, or which by reasonable inference infer or argue the nonexistence of the facts relied on by the plaintiff. Winn v. Gilmer, 81 Tex. 345, 16 S.W. 1058; Southern Kansas Railway Co. v. Wallace (Tex.Com.App.) 206 S.W. 505; Colorado & S. Ry. Co. v. Rowe (Tex.Com. App.) 238 S.W. 908; Horton & Horton v. House (Tex.Com.App.) 29 S.W.(2d) 984; Rosenthal Dry Goods Co. v. Hillebrandt (Tex.Com.App.) 7 S.W.(2d) 521. In actions of trespass to try title, claim for allowance for improvements in good faith and the defense of limitation are required by statute to be specifically pleaded. Vernon's Ann.Civ.St. arts. 7372, 7373. For an interesting discussion of the function of the general denial see 7 Tex.Law Review, p. 345 et seq. The issue was therefore raised by the general denial. Beason v. Williams (Tex.Civ.App.) 229 S.W. 963; Smith v. Adoue & Lobit (Tex.Civ.App.) 154 S.W. 258; Southwestern Lumber Co. of N. J. v. Allison (Tex.Civ.App.) 261 S.W. 1085; Whitaker v. Thayer, 38 Tex.Civ.App. 537, 86 S.W. 364; Texas Western Ry. Co. v. Wilson, 83 Tex. 153, 157, 18 S.W. 325.

Appellants next contend that the issues concerning recognition of title were merely evidentiary in their nature, that the general issues of adverse possession and limitation submitted by the court were the only ultimate issues in the case, and that the issues of recognition should not have been submitted to the jury. This submission was duly excepted to by the appellants on that ground, and appellants also made a motion for judgment non obstante veredicto. We think this contention is also without merit. We think it is too well settled by the decisions of our courts to admit of argument that recognition of an owner's title by a limitation claimant during the limitation period is fatal to a limitation claim. Houston Oil Co. v. Pullen (Tex. Com.App.) 272 S.W. 439; Gillean v. Frost,

25 Tex.Civ.App. 371, 61 S.W. 345; Wier Lumber Co. v. Eaves (Tex.Com.App.) 296 S.W. 481; Texas & N. O. Ry. Co. v. Speights, 94 Tex. 350, 60 S.W. 659.

Thus, recognition of the defendant's title was an ultimate and controlling issue which, when found to exist, completely destroyed the plaintiffs' claim to title by limitation. Being an ultimate and controlling issue, it was proper for the court to submit it. Fox v. Dallas Hotel Co., 111 Tex. 461, 240 S.W. 517; Southern Kansas Ry. Co. v. Wallace (Tex.Com.App.) 206 S.W. 505; Rosenthal Dry Goods Co. v. Hillebrandt (Tex.Com.App.) 7 S.W.(2d) 521; Colorado & S. Ry. Co. v. Rowe (Tex.Com.App.) 238 S.W. 908.

■■ Nor do we think that the special findings concerning recognition of title were in conflict with the general issues of adverse possession and limitation found in plaintiff's favor so as to require the trial court to enter a mistrial. The special findings were not necessarily inconsistent with the general findings. The plaintiff Cuniff may have had the intent to claim the land adversely, as he testified he did. But, no matter what his intent may have been, his recognition of the defendant's title, as a matter of law, destroyed the adverse character of it. This matter of the legal effect of the recognition of defendant's title by Cuniff was not, of course, specially submitted to the jury. We may therefore assume that the intent of the jury was to find that plaintiffs had held possession of the land with intent to claim it adversely, but also that O. T. Cuniff had, during the limitation period, recognized the defendant's title. Such construction of the findings is consistent with the pleadings and the evidence as a whole. For that reason alone the trial court was warranted in giving effect to the special findings of recognition. Jordan v. Morgan (Tex.Civ.App.) 154 S.W. 599; American National Ins. Co. v. Walker (Tex.Civ.App.) 81 S.W.(2d) 1061. But, even if the special findings be treated as contradictory of the general issues submitting the 10-year statute of limitation, still the special findings of recognition must be given controlling effect. In such case the general finding is treated as a mere legal conclusion, the effect of which is destroyed by the adverse finding of a controlling fact upon which such conclusion rests. Houston Oil Co. v. Howard (Tex.Civ.App.) 256 S.W. 340, affirmed (Tex.Com.App.) 294 S.W. 848; Vernon's Ann.Civ.St. art. 2211.

■ It is not material that plaintiff's admissions of title were made to R. S. Sterling at a time when he was not the owner of the property. The admissions in question appear to have been made between the year 1922, when Cuniff fenced the land and commenced his claim, and the year 1927. During all that time title to the land in controversy was in the R. S. Sterling Investment Company; R. S. Sterling having conveyed it to the company in 1913. It is undisputed that R. S. Sterling was president of the R. S. Sterling Investment Company. It appears beyond question that Mr. Sterling was looking after the land. The lands in the Sterling subdivision were known generally as the Sterling lands. Under the record before us, the admissions made to R. S. Sterling were admissions of the title of the record owner, the R. S. Sterling Investment Company, for which he was acting. R. W. Wier Lumber Co. v. Eaves (Tex.Civ.App.) 291 S.W. 337.

■ Nor is it material that the court, in framing the issues, did not specifically inquire as to whom the admissions were made. The undisputed evidence was that whatever admissions were made by Mr. Cuniff were made to R. S. Sterling.

■ Appellants make the further point that the defendant has no record title and that they were entitled to recover under the doctrine of prior possession. Defendant's title is deraigned under a patent from the state to the T. & N. O. Ry. Company, assignee of H. T. & B. Ry. Company in 1890. Plaintiffs introduced in evidence copy of a map appearing in the general land office prepared in 1840 by the county surveyor of Jefferson County, which map shows the land upon which H. T. & B. section 69 is situated to be covered by a survey made for A. Byerly. The testimony of an assistant in the general land office reveals that he had found no field notes of such survey, nor evidence that any patent had ever issued, and apparently the only evidence of its existence is the old map.

We think appellant's contention is without merit, for two reasons: In the first place, the issuance by the commissioner of the general land office of the patent to the T. & N. O. Railroad Company, under which the defendant holds, involved the finding of the fact of vacancy. His action in issuing the patent is conclusive of the question of its validity on collateral attack. Appellants are asserting no claim under the Byerly survey, and, other than the old map,

there is no evidence that any one has ever asserted any claim under it. After this long lapse of time, more than 90 years, the presumption obtains that, if any survey was ever lawfully made for Byerly, same had been lifted prior to the issuance of the patent to the T. & N. O. Railroad Company. Wehrly v. Humble Oil & Ref. Co. (Tex.Civ.App.) 64 S.W.(2d) 396, 397 (writ refused). In the second place, the appellant's recognition of the defendant's title had the effect of depriving them of any claim under the doctrine of prior possession. Certainly no presumption that plaintiffs' possession was by virtue of their acquirement of a superior outstanding title can be indulged in the face of their admission of title in the defendant and its predecessors in title. To do so would be to presume a fact which plaintiffs admit did not exist.

Finding no error, the judgment of the trial court is in all things affirmed.

### On Rehearing.

On rehearing the appellant has requested us to make some additional findings. Most of the requested findings are mere matters of record which appear without dispute. The findings will be given as requested with such amendment or brief comment as deemed necessary to a correct understanding of them:

First. "Upon the trial appellees presented the purported grazing lease dated July 27, 1922, purporting to be signed by O. T. Cuniff and covering the land in controversy and other land. Appellants deny that the said lease was signed by O. T. Cuniff and contended that same was a forgery. An issue of forgery of said instrument, was made in the record and in the seventh special issue, the following question was asked and the following answer given 'do you find from the preponderance of the evidence that the grazing lease dated July 27th, 1922 was signed by O. T. Cuniff? Answer Yes or No as you find the fact to be.' To which issue the Jury answered No."

Second. "In special issue No. Eight the Jury was asked the following questions 'do you find from a preponderance of the evidence that the defendant O. T. Cuniff in 1925 requested an oil and gas lease on the land in controversy? Answer Yes or No as you find the fact to be.' To this question the Jury answered Yes."

Third. "In special issue No. Ten, the Jury was asked the following question 'do you find from the preponderance of the evidence that the defendant O. T. Cuniff requested the oil and gas lease dated August 31, 1926, and marked as exhibit No. 76, on the land therein described? Answer Yes or No as you find the fact to be.' To this question the Jury answered Yes."

Fourth. "The Jury in special issue No. 11 was asked the following question 'do you find from the preponderance of the evidence that O. T. Cuniff in 1926 requested an oil lease on the land in question herein, answer yes or no as you find the fact to be' to this question the jury answered Yes."

As stated in our original opinion, the Cuniffs contended that their negotiation and correspondence with Mr. Sterling concerning pasture leases had to do with that part of the Sterling lands which lay outside of their inclosures and which were not sued for in this suit. Mr. Cuniff specifically denied that he had attempted to lease any of the Sterling lands which he had inclosed and which are here sued for. As bearing upon his theory that his acknowledgment of ownership in the letters written to Mr. Sterling related to the outside lands, excerpts from certain of the letters are given in the following three findings:

Fifth. "On August 16th 1923, Mrs. Cuniff for her husband wrote to R. S. Sterling a letter containing the following language: 'Mr. Sterling you will find enclosed the pasture lease, I have been unable to fence it at all.'"

Sixth. "That O. T. Cuniff wrote R. S. Sterling on March 7, 1925, a letter containing the following language 'now I want to know if it will be satisfactory for me to return the lease on the land to you until I am able to fence it.'"

Seventh. "On Feb. 15 1926, O. T. Cuniff wrote R. S. Sterling a letter containing the following language: 'I am sorry but have been unable to fence the land at all.'"

To the above we will add that none of the letters written by O. T. Cuniff to R. S. Sterling made reference to any specific tracts of land except the letter of September 15, 1925, which is set out in the original opinion, which does make reference to block 6, which was within the Cuniff inclosure and sued for in this suit.

Eighth. "No letter was ever addressed by either of the appellants to R. S. Sterling Investment Company, the record holder requesting any pasture lease or having reference to any pasture lease during the term of the possession, during which they claimed limitation."

As stated in the original opinion, the correspondence was addressed to R. S. Sterling, and various negotiations for pasture leases and oil leases were carried on with him by letters addressed to him and by a personal visit made by O. T. Cuniff to Mr. Sterling's office in Houston.

Ninth. "No holder of the record title to the land in controversy ever wrote any letter to the appellants or either of them relative to a pasture lease during the limitation period claimed by the appellant."

The letters respecting the above matter were written by R. S. Sterling personally.

Tenth. "No correspondence written by the appellants or R. S. Sterling with reference to a pasture lease described any land supposed to be contained in said lease, or showed that any of the land in controversy was considered in said lease."

The correspondence with reference to pasture leases did not designate the particular tracts referred to or make any specific reference as to whether they lay inside or outside of Mr. Cuniff's fences.

Eleventh. "Appellee to show that the land in controversy was intended to be considered in the correspondence with reference to a pasture lease attempted to tie the said letter into the description in the purported pasture lease, which the Jury found to have been a forgery."

Twelfth. "There was no correspondence of any kind between the appellant and the R. S. Sterling Investment Company or other owner of the record title, relative to the execution of any oil lease in 1925; or 1926."

The negotiations by Mr. Cuniff for securing the oil and gas leases in 1925 and 1926 were with Mr. R. S. Sterling.

Thirteenth. "There was no finding of the Jury that the appellants or either of them ever requested from R. S. Sterling Investment Company the Record owner any oil lease on any part of the land in controversy."

In response to special issue No. 8 the jury found that O. T. Cuniff, in 1925, requested an oil and gas lease on the land in controversy. The issue did not name the person from whom it was requested, but the evidence was undisputed that, if requested at all, it was requested from R. S. Sterling. The only issue was as to whether it was requested at all. In response to issue 10 the jury found that O. T. Cuniff requested the oil and gas lease dated August 31, 1926, and which was placed in evidence.

Fourteenth. "There was no correspondence of any kind between the appellants and R. S. Sterling or anyone else having reference to any oil lease on Blocks one, two or three of the Sterling Subdivision, nor was there any letter referring to an oil lease on any part of said subdivision, except the letter of date of September 15, 1925, copied in the opinion."

Fifteenth. "Governor Sterling testified by deposition as follows:

" 'Q. This mineral lease that was made and sent over here to the bank in 1926 was signed by you individually, wasn't it? A. I think so.

" 'Q. I mean both the letter and the lease was signed by you? A. I believe it was.

" 'Q. At that time you had passed your individual interest to this corporation and the title was in the corporation?' A. Yes, sir.' "

Sixteenth. "The only oil lease shown by the record was the one dated August 31, 1926, inquired about in special Issue No. 10 which was executed by R. S. Sterling individually who was a stranger to the title and was sent to the Sour Lake State Bank to be delivered to appellant when the well was spudded in, which lease covered a part but not all of the land in appellant's enclosure and said lease was never delivered to or accepted by the appellant."

Seventeenth. "No witness testified as to any statement by Cuniff that he had a pasture lease from anyone either Sterling or Sterling Investment Company, to any land in his enclosure, but appellee's witness Jim Barfield corroborated appellant in stating that the appellant discussed with him the leasing of outside land, he having testified on page 810 of the Statement of Facts, 'well he and I, he came to me and wanted us to get together and fence up the whole block of outside land of Mr. Sterling's and two other sections adjoining it,' and was further corroborated by the appellee's witness Mitchell, who testified that appellant discussed with him the sending back of a grass lease, and at the time they were discussing it, they were riding outside the enclosure on the land which appellant testified was the only land considered by him for the pasture lease."

In their motion for rehearing appellants also object to our statement in the original opinion that they made a motion for judgment non obstante veredicto; their contention being, as we understand it, that they were entitled to judgment *on the verdict.*

Whether their motion was one technically non obstante veredicto is not material. In any event, they necessarily insist that the findings of recognition of title were of no consequence. As discussed in our original opinion, it is our view that such findings were decisive of the case.

The motion for rehearing is overruled.