## C. VOLLENWEIDER & SONS v. SOUTHERN PAC. LINES et al.

### No. 12674.

Court of Civil Appeals of Texas. Dallas.

Nov. 12, 1938.

Ely Straus, of Dallas, for appellant.

· Robertson, Leachman, Payne, Gardere & Lancaster, and Joe W. Riley, all of Dallas, for appellees.

LOONEY, Justice.

· This suit involves an interstate shipment of a car of apples from Buckingham, Idaho, to Dallas, Texas. The material facts are these: on November 20, 1934, appellants, a partnership, delivered (in the name of J. A. McMillan as consignor) a car of apples (loaded in bulk) to the Oregon Short-Line Railway Company at Buckingham, Idaho, to be transported on a through bill of lading routed over the Union Pacific Lines and the Frisco (St. Louis & San Francisco Rwy. Co. of Texas) from Kansas City, Mo., to Dallas. Neither of the appellees was mentioned in the bill of lading. The car was brought into Dallas by the Frisco on November 25, 1934, and about 10:30 A. M. of that day was placed on what is called the interchange track at the Union Station. Appellee, Texas & N. O. Rwy. Company, being notified of the arrival of the car by a representative of the Frisco, in turn, notified appellants of its arrival and that it would be transported to what is called

the produce track, the place of actual delivery. After being inspected the car was picked up by a switching crew of appellee, Texas & N. O. Railway Company, about 11:00 o'clock A. M., transported eight or nine blocks, and was spotted on the produce track at about 11:10 A. M., thus completing delivery to appellants and on delivery, the Texas & N. O. Railway Company collected from appellants the freight charges for the entire route.

When delivered to the initial carrier at Buckingham, Idaho, the apples were sound and undamaged, but when the car was opened at Dallas, about noon of November 25th, the apples showed evidence of deterioration from heat, due to improper ventilation; the damages proximately resulting from the injury amounted to $319, for the recovery of which this suit was instituted against "Southern Pacific Lines" and the Texas & New Orleans Railway Company.

The undisputed evidence showing that, the Southern Pacific Lines neither owns nor operates a railroad, was not a legal entity, but merely a name or style under which the Texas & N. O. Railway Company operated, the court directed a verdict and rendered judgment in its favor; and the uncontradicted evidence showing that, the only connection the Texas & N. O. Railway Company had with the car of apples was in performing the switching service, after the Frisco had completed the line-haul; and the evidence failing to show that the Texas & N. O. was guilty of any act of negligence causing or contributing to the injury or damage, on motion, the court directed a verdict and rendered judgment in its favor, from which this appeal was taken.

We think it obvious that, the suit was instituted, tried below, and the appeal prosecuted on the theory that, the Texas & New Orleans Railway Company was the delivering carrier, and as such liable, under the Carmack Amendment (49 U.S.C.A. § 20, par. 11), for the entire damages proximately resulting from the negligence of either the initial or an intermediate carrier —in other words, said appellee was sought to be held liable as the delivering carrier, within the meaning of said Act.

Under the Act in question, only the initial and delivering carriers are made liable for the full amount of the loss, damage or injury to property, occurring en route, when transported, as in the instant case, on a through bill of lading. The applicable parts of the Act in question are these: "Any common carrier, railroad, or transportation company subject to the provisions of this chapter receiving property for transportation from a point in one State * * * to a point in another state, * * * shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass within the United States * * * when transported on a through bill of lading * * * or any common carrier, railroad, or transportation company delivering said property so received and transported shall be liable to the lawful holder of said receipt or bill of lading or to any party entitled to recover thereon, whether such receipt or bill of lading has been issued or not, for the full actual loss, damage, or injury to such property caused by it or by any such common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass within the United States * * * when transported on a through bill of lading, * * *. And provided further, That for the purposes of this paragraph and of paragraph (12) the delivering carrier shall be construed to be the carrier performing the line-haul service nearest to the point of destination, and not a carrier performing merely a switching service at the point of destination: * * *." (As amended July 3, 1926, c. 761, 44 Stat. 835; Mar. 4, 1927, c. 510, § 3, 44 Stat. 1448; Apr. 23, 1930, c. 208, 46 Stat. 251)".

As originally enacted the statute imposed only on the initial or receiving carrier liability for the entire loss or damage caused by it or any of its connecting carriers to property transported on a through bill of lading from one state to another; but, by an amendment adopted on July 3, 1926, a similar liability was imposed upon the delivering carrier; the amending Act defines "delivering carrier" to be the carrier performing the line-haul service nearest to the point of destination, expressly excluding from the definition, a carrier performing merely a switching service at the point of destination, such as was performed by the Texas & N. O. Railway Company. However, before the amendment of July 3, 1926, the Supreme Court, in Missouri Pac. Ry.

Co. v. Reynolds-Davis Grocery Co., 268 U.S. 366, 368, 45 S.Ct. 516, 69 L.Ed. 1000, a case similar in its facts to the case at bar, held that, the switching carrier, as in the instant case, not being named in the bill of lading, acted simply as the agent of the delivering carrier for the purpose of making actual delivery.

■ It is our opinion that, the Texas & N. O. Railway Company, in spotting the car of apples on the produce track—that is, making physical delivery of same to appellants—performed merely a switching service at the point of destination, hence was exempt from liability for the damages occasioned en route and, if liable at all, could only be held for the loss, damage or injury, if any, caused by its own negligence during the period, of about 40 minutes, the car was either in its actual or constructive possession, a matter to be discussed later in this opinion.

Appellant also contended that, as appellees' answer was simply a general denial, they were not entitled to show, and the court in charging the jury was not justified in considering the fact that, in transporting the car from the interchange track and spotting it upon the produce track, they merely performed a switching service, hence were not liable for the loss or damage occurring en route from the point of origin; the contention being that, such fact injected a defense, in the nature of a confession and avoidance, which should have been, but was not, specially plead.

■ We think it is obvious that, appellants' pleadings and proof below, their propositions urged, authorities cited and arguments made in support of the appeal, show that they are seeking to hold appellees liable, under the Act of Congress, for the entire damage to the car of apples, on the theory that they were the "delivering carrier". The general denial cast upon appellants the burden of showing that, in fact, appellees were the delivering carriers, and performed the line-haul service nearest the point of destination, hence, the proof offered by appellees, showing that they merely performed the switching service after the line-haul to the point of destination had been performed by the Frisco, in our opinion, was, in no sense, a confession and avoidance, but a complete negation of appellants' contention, and was admissible under the general issue.

■ The rule sustained by an unbroken line of authorities is to the effect that, a general denial allows the introduction by a defendant of any evidence, not otherwise inadmissible, which has the effect of directly rebutting plaintiff's allegations, or which, by reasonable inference, shows the non-existence of the facts relied upon by plaintiff. Altgelt v. Emilienburg, 64 Tex. 150; Goodwin v. Biddy, Tex.Civ.App., 149 S.W. 739; Wells, Fargo & Co. v. Hanson, 41 Tex.Civ.App. 174, 91 S.W. 321; Corpus Christi, etc., R. Co. v. Kjellberg, Tex.Civ. App., 185 S.W. 430; Cuniff v. Bernard Corporation, Tex.Civ.App., 94 S.W.2d 577.

Appellants also contend that, the court erred in directing the verdict, in that, appellees failed to show a lack of negligence on their part while performing the switching service. The undisputed evidence (being the testimony of one of the appellants) is, that the sole proximate cause of the damaged condition of the apples was the intensive heat to which they were subjected, evidently due to improper ventilation of the car. Soon after the car was placed upon the interchange track by the Frisco, it was inspected (between 10:30 and 11 A. M.) and, at that time, was well ventilated, the vents being open, the plugs out, and the temperature was between 54 and 56 degrees Fahrenheit. At 11:10 A. M. the car was placed on the produce track —thus, appellee completed the switching service and delivery of the car to appellants.

■ We think the conclusion inescapable that, appellants' damages did not result from any default or negligence on the part of appellees, but was due solely to improper ventilation en route before the car reached Dallas, therefore, conclude that the trial court did not err in directing the verdict for appellees, hence, its judgment is affirmed.

Affirmed.